Argued July 15, affirmed in part, reversed in part
September 9, 1959

# MULTNOMAH SCHOOL OF THE BIBLE v. MULTNOMAH COUNTY ET AL

343 P. 2d 893

*Wendell E. Cameron,* Portland, argued the cause and filed a brief for appellant.

*Robert M. Christ,* Deputy District Attorney, Portland, argued the cause. On the brief were Leo Smith, District Attorney, Portland, and Willis A. West, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and LUSK, WARNER and MILLARD, Justices.

WARNER, J.

This is a proceeding in mandamus. The plaintiff, Multnomah School of the Bible, hereinafter called the "Bible School," is a nonprofit institution, engaged in literary, benevolent and educational activities in the city of Portland, incorporated under ORS 61.010 to 61.130 of the code relating to nonprofit corporations. In addition to the defendant Multnomah county, plaintiff has made the County Assessor, County Sheriff and its three County Commissioners parties defendant. We will later refer to all these defendants as "the County." From an order dismissing the alternative writ, plaintiff appeals.

The Bible School is the owner of a certain parcel of real property in east Portland to which we will later make more particular reference. It also operates a book store some distance from the school in west Portland, called the Christian Supply Center.

It claims that the real property known at Tax Lot 440, which is part of the school campus, and the personal property in its store, are entitled to exemption from ad valorem taxes assessed by the officials of Multnomah county for the tax year 1956-1957 because of its educational and charitable activities, as was declared by the circuit court in a suit instituted by the

Bible School in 1954 which resulted in a decree in May, 1955, enjoining the defendants from thereafter assessing or collecting taxes on said properties. The Bible School now seeks to compel obedience by defendants to that decree.

The real property owned by the Bible School consists of approximately 10 acres, including Tax Lot 440, at 8435 Northeast Glisan Street, in the city of Portland. It constitutes in its entirety the school campus. This parcel, together with the six buildings located thereon, was originally owned by the state of Oregon and operated as a state school for the blind.

The Bible School is a nondenominational institution and makes no tuition charges and affords opportunities for a general education, meeting all requirements of an accredited liberal arts college but emphasizing the study of the Bible, with preparation qualifying its graduates for missionary work and other forms of religious activity. It holds both day and evening classes, serving approximately 150 students who live on the campus. Of these, 100 girls have residences in the dormitories reserved for women and 50 boys reside in the dormitory established for their accommodation. During the school periods as many as 200 students daily take their meals on the campus in the school dining hall.

There is situated on Tax Lot 440 a residential structure. The lower part is occupied by the school's superintendent of buildings and his wife, and the upper story by the school's dining hall supervisor.

In addition to these uses, the living room of this building is used for student activities and small group meetings, the Student Missionary Union and certain prayer groups. This room is also provided with a practice piano which the students use daily.

The plaintiff represents that the presence of its building superintendent is required on the campus 24 hours a day, 12 months of the year, to give immediate attention, when needed, to the various utilities serving all the school buildings. Tunnels constructed by the state during its ownership not only carry elements of the central heating system, but also of the plumbing and electrical wiring systems. All these are under the care and direction of the building superintendent. The buildings and conduits of the various utilities are old and give rise to emergency situations requiring immediate attention.

The Bible School further asserts that the duties of the dining hall supervisor require her presence on the campus the greater part of each day, which, for her, begins at 4.30, a.m.; and that organizational and administrative efficiency demand that the building superintendent and dining hall supervisor live on the school grounds at all times. It is on the residence of these employees on Tax Lot 440 that the County rests its claim of tax liability.

The stock of merchandise in the Christian Supply Center consists in the main of Sunday School supplies, Bibles of various styles, missionary film strips, moving pictures, picture projection machines, religious records, greeting cards and miscellaneous novelties with a religious flavor. While the store caters to missionaries and Sunday School teachers, without regard to denomination, its merchandise is sold to whomsoever of the public may be interested in buying.

The foregoing statement of facts and those that follow are supplied by plaintiff's witnesses and are not controverted by defendants.

Tax Lot 440 and the personal property of the store were placed on the tax rolls and assessed for the tax

year 1954-1955. This gave rise to the suit filed in December, 1954, to which we have already made reference.

In that earlier suit against the same defendants, the Bible School claimed that the same property, real and personal, which is the subject of this proceeding, was tax exempt, giving the same reasons urged here. That suit, as we have noticed, resulted in the decree of May, 1955, declaring those properties to be tax free and enjoining the defendants from thereafter levying or collecting any ad valorem taxes.

The relief sought and granted by the circuit court in 1955 was made pursuant to ORS 307.130, which then read as follows:

> "Upon compliance with ORS 307.170, the personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions *as is actually occupied for the purposes for which they were incorporated or for the sole convenience of its members shall be exempt from taxation.* The liability of any such institution for payment of principal or interest on any obligation of the institution, whether direct or assumed, shall not deprive it of the exemption otherwise allowable." (Emphasis ours.)

ORS 307.130 has had a long history. It was first passed by the territorial legislature in 1854 and continued in force by Oregon Constitution, Art XVIII, § 7 (*Hibernian Benevolent Society v. Kelly,* 28 Or 173, 189, 42 P 3, 30 LRA 167), until 1945, when it was amended for the first time by adding thereto "or for the sole convenience of its members" (Oregon Laws 1945, ch 296, p 441).

Thereafter, the legislature of 1955 by § 1, ch 576,

Oregon Laws 1955, p 692, again amended ORS 307.130, and it now reads:

"(1) Upon compliance with ORS 307.170, the following property owned by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a) Except as provided in ORS 740.080, only such real or personal property, or proportion thereof, *as is actually and exclusively occupied or used* in the literary, benevolent, charitable or scientific work carried on by such institutions.

"(b) Parking lots maintained solely for the use, without charge, of persons going to and from the property exempted under paragraph (a) of this subsection, but not if such lots are used for parking or other purposes not connected with the use and maintenance of such property." (Emphasis ours.)

The amendment also abolished the prior provision which limited the right of exemption to domestic corporations and by § 3 of the Act of 1955, established its effective date as of January 1, 1956.

Notwithstanding the strictures of the 1955 decree in the first suit, the taxing authorities of Multnomah county, relying on the legislative amendment of 1955, proceeded to assess and levy upon the same two items of property for taxes for the tax year 1956-1957. This they did on the theory that these items of real and personal property "were not actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work" carried on by the Bible School as owner of said property. This action on the part of the County precipitated the instant mandamus proceedings, filed January 30, 1957.

At the outset of the trial, the parties stipulated that the court could have recourse to and rely upon all the testimony and exhibits and entire record made in the

suit of 1954 and take and consider the same in all respects as the evidence governing the instant matter.

Since there was no other evidence offered in the present proceeding, consideration is limited to the earlier record to determine whether or not there was substantial evidence in that case to support the finding of the trial court that neither the real nor personal property was exclusively occupied or used by the Bible School in the work it was carrying on. We must also assume, as apparently did the trial court, that the factual situation of the Bible School as to the uses of its property remained status quo between 1954 and 1957.

Referring to ORS 307.130, supra, as it was before the amendment of 1955, we find the right to exemption was dependent upon a showing that the property was "actually occupied for the purposes for which [the institution was] incorporated * * *." It was this language that determined the favorable decree of 1955.

The fundamental change made in ORS 307.130 by the act of 1955 as that section existed at the time of the decree of 1955, so far as pertinent here, was to establish a new test for the determination of the right to tax exemption. By the act of 1955, such property "or portion thereof, as is actually and exclusively occupied or used" became the cardinal criterion for the purposes of tax exemption. Oregon Laws 1955, ch 576, § 1(a), p 693.

■ In short, before the 1955 amendment, the right to tax exemption turned upon *actual occupation* for the purposes of the institution. But after the amendment, the test to be thereafter applied was: whether the property was *actually and exclusively occupied or used* for such purposes.

That the real property levied upon for the 1954-

1955 tax year was *actually occupied* for the purposes of the institution, was, and we believe correctly, determined by the court by its 1955 decree. No effort is made by the County to now challenge the actuality of the school's occupation. Here, the County says, in essence: "Even if actually occupied, the properties taxed were not *'exclusively'* occupied or used in the literary, benevolent, charitable or scientific work carried on by the Bible School and therefore cannot enjoy the exemption provided by ORS 307.130 as amended in 1955."

Before going forward further, we take note of certain rules of construction which are peculiarly applicable to the case at bar.

■ The first is: It is a canon of universal recognition that tax exemption statutes should be strictly construed in favor of the state and against the taxpayer. See *Methodist Book Concern v. State Tax Commission,* 186 Or 585, 593, 208 P2d 319 (1949), and cases there cited; *Unander v. Pasquill,* 212 Or 213, 223, 319 P2d 579; 84 CJS 443, Taxation § 227.

■ The second rule is a corollary to the first and in substance is: That the foregoing rule of strict construction does not foreclose the application of a reasonable construction in order to ascertain the legislative intent. This was aptly stated by the Supreme Court of California in *Cedars of Lebanon Hospital v. Los Angeles County,* 35 Cal2d 729, 221 P2d 31, 15 ALR2d 1045 (1950), a tax exemption case, and where that court said:

> "But the rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation

of the language employed and the object sought to be accomplished thereby. * * * On the basis then *of a strict but reasonable* construction of the welfare exemption law, the several points of dispute between the parties will be determined." (221 P2d, supra, at 35) (Emphasis ours.)

See also, *Young Men's Christian Assoc. v. Los Angeles County,* 35 Cal2d 760, 221 P2d 47, 51; *Serra Retreat v. Los Angeles,* 35 Cal2d 755, 221 P2d 59, 61.

The rule of strict but reasonable construction in jurisdictions other than California arise where its application is occasioned by circumstances of the tax exemption of property of charitable, educational and other eleemosynary institutions. More recent instances in these jurisdictions where the phrase "strict but reasonable," or their substantial equivalent, have been used are: *St. Louis Gospel Center v. Prose,* 280 SW2d 827, 830 (Mo 1955); *Gifford Memorial Hospital v. Town of Randolph,* 119 Vt 66, 118 A2d 480, 484 (1955); *State Tax Commission v. Whitehall Foundation,* 214 Md 316, 135 A2d 298, 300 (1957); *Carney v. Cleveland City School Dist. Public Library,* 169 Ohio St 65, 157 NE2d 311, 312 (1959); *Application of Thomas G. Clarkson Memorial C. O. T.,* 191 Misc 621, 77 NYS2d 182, 185 (1948). See, also, 2 Cooley, Taxation (4th ed), 1415, § 674; 51 Am Jur 531, Taxation § 528; 84 CJS 443, Taxation § 227, supra.

In effect, we have already aligned this court with the "strict but reasonable rule," when, in *Corbett Invest. Co. v. State Tax Commission,* 181 Or 244, 250, 181 P2d 130, we quoted with approval the following statement of Mr. Justice Cardozo, who, speaking for the court in *Trotter v. Tennessee,* 290 US 354, 78 L ed 358, 54 S Ct 138, said:

"Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced.

Chicago Theological Seminary v. Illinois, 188 U. S. 662, 674, 23 S. Ct. 386, 47 L. Ed. 641. On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers." (181 Or, supra, at 250)

This court has heretofore had no occasion to give definition to the phrase "exclusively occupied or used" or to words or phrases of similar import, either in tax or other matters. One reason is: The requirement that the property of educational and charitable institutions be "exclusively occupied or used" for the work carried on by the institution as a condition precedent to tax exemption is, since 1955, a new concept in Oregon. But the words are not, however, of novelty in many other states. The jurisdictions with "exclusive use" requirements in their statutes or constitutions are many and most of them have had to deal with the question which is before us now. Therefore, an examination of their decisions will be helpful in framing our judgment.

■ The phrase "exclusively used" has reference to the primary and incidental use. *People v. Lawler,* 74 App Div 553, 77 NYS 840, 842; *State ex rel. Spillers v. Johnston,* 214 Mo 656, 113 SW 1083, 1085.

■ It is the primary as distinguished from an incidental use that determines whether it is exempt from taxation. *Gifford Memorial Hospital v. Town of Randolph,* supra (118 A2d 848). As said in *People ex rel. Marsters v. Rev. Saletyni Missionaries, Inc.,* 409 Ill 370, 99 NE2d 186, 189 (1951): "When the primary purpose is an exempt one, any incidental use of the exempt property for another purpose does not negative the exemption when the incidental use is not for profit."

In the case of *Y. M. C. A. v. Los Angeles County,* supra (221 P2d at 51), the Supreme Court of California

stated the proposition, as follows: "\* \* \* it would appear that the exemption of property 'used exclusively for \* \* \* charitable purposes', like the exemption of property 'used exclusively for religious [or] hospital \* \* \* purposes,' should be held to include property used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of such purposes." Later, this doctrine, following *Y. M. C. A. v. Los Angeles County,* supra, was extended to property "used exclusively" for educational purposes. *Church Divinity School v. County of Alameda,* 152 Cal App2d 496, 314 P2d 209 (1957).

If the incidental use (in the case at bar, the residential use by essential employees of plaintiff) does not interrupt the exclusive occupation of the buildings for school purposes, but dovetails into or rounds out those purposes, then there can fairly be said to be left an exclusive use in the school on which the law lays hold for purposes of tax exemption. *State ex rel. Spillers v. Johnston,* supra (113 SW at 1085); *First Unitarian Society v. Town of Hartford,* 66 Conn 368, 34 A 89.

In the Serra Retreat case, supra, the court said, at p 61: "The integrated activities [of an institution] as a whole must be examined in determining the tax status of property for the [tax] exemption." According to *Church Divinity School v. County of Alameda,* supra (314 P2d at 213): "\* \* \* 'property used exclusively for \* \* \* purposes of education' includes any facilities which are reasonably necessary for the fulfillment of a generally recognized function of a complete modern college."

■ There is a negative aspect involved in the determination of what property is "exclusively used" in the work carried on by the institution that merits com-

ment. A given facility does not have to satisfy the test of "absolute indispensability" to the purposes of the institution in order to enjoy tax exemptions. It is enough if it can be said to be incidental to the prime purposes of the institution and reasonably necessary to the accomplishment of that purpose.

In the Cedars of Lebanon case, supra, the California Supreme Court repudiated the rule of "absolute indispensability," saying (at p 41): "* * * but absolute indispensability does not commend itself as an appropriate test, and it finds no support in the authorities." See *Corporation of Sisters of Mercy v. Lane County,* 123 Or 144, 261 P 694, infra.

The California cases cited, i.e., *Cedars of Lebanon Hospital v. Los Angeles County, Young Men's Christian Association v. Los Angeles County* and *Serra Retreat v. Los Angeles County,* are together an impressive trilogy on the subject of tax exemption as to three different types of charitable institutions and as to many different uses of property owned by the several plaintiffs. All of these opinions were written by Mr. Justice Spence of the California Supreme Court and handed down the same day, August 18, 1950. Taken together, they constitute a scholarly, persuasive and authoritative analysis on the subject of our present interest: when are properties "exclusively used" for the purposes and objects for which a given institution was created, and when is property or portions of property "used" by such institutions not eligible to tax benefit.

We shall not explore these cases further except to indicate some kinds of property which were held exempt as incidental to and reasonably necessary for the accomplishment of the purposes of the particular institution to which they were adjunct. In the Cedars of

Lebanon case (hospital), supra, it was housing for student nurses and a tennis court maintained as a recreational facility for hospital employees. In the Y. M. C. A. case, supra, property devoted to dormitory rooms was held exempt, but that part of the same building used for a restaurant, tailor shop, barber shop and store, and rented to the Selective Service Board, was held not entitled to exemption. In the Serra Retreat case, supra, lodgings for priests affecting the operation of a religious retreat house were declared exempt.

We note that in the Cedars of Lebanon case, the court supported its holding on the exemption of the tennis court by citation to two cases, one from Minnesota and one from Oregon (221 P2d, supra, at 40). The Oregon case was *Corporation of Sisters of Mercy v. Lane County,* supra, wherein a tennis court used "to afford recreation for the pupil nurses and employees" at the hospital was held tax exempt as a part of the hospital property.

That result in the Oregon case, though decided when the Oregon exemption statute required only actual occupation, by implication, supports the rule in the Cedars of Lebanon case to the effect that "absolute indispensability" urged upon the court by the defendant in that case is not an appropriate test even under the requirement of exclusive use. The holding in the later California case of *Church Divinity School v. County of Alameda,* supra (1957), was a natural consequent of the rules established in the tax trilogy by Mr. Justice Spence. The Divinity School opinion holds that a parking lot owned by the school which was contiguous to the campus for the use of students and staff, was property "used exclusively" for the purposes

of education, notwithstanding a nominal charge was made for the privilege.

The following cases demonstrate that while adhering to the rule of strict construction when construing tax exemption statutes, the courts, in trying to capture the meaning of "exclusively used" and kindred phrases, travel a road distinguished for its appreciation of common sense and reason.

In *Blackman v. Houston, Tax Collector,* 39 La Ann 592, 2 S 193, Poche, J., said:

"\* \* \* It stands to reason that a college, with some two or three hundred scholars, who would also be boarders, would not lose its character as being used exclusively for school purposes, because, forsooth, it would contain rooms for the accommodation of necessary teachers, as well as *for the servants, required for the preparation of the food of teachers, as well as of scholars,* and for the performance of other household duties. It is too plain in our minds for argument that all these incidents are necessary adjuncts to property used exclusively for college purposes. It would certainly be imprudent, if not dangerous, to leave unoccupied at night, or when classes are not being actually taught, a building used for school purposes in a large city; and the argument which would hold that *the occupation of such building by a janitor and his family* would destroy or even impair its character as being used exclusively for school purposes would doubtless find no sanction under the true meaning of the article of the constitution, or even in reason and common sense. Is it entitled to more consideration or to greater weight when applied to the owner of the building, who is the principal and one of the teachers of the school kept therein? \* \* \*." (2 S at 193-4) (Emphasis ours.)

In *Carter v. Patterson* (Tex Civ App), 39 SW 1110, it was held that a building used as a boarding school is

not deprived of its exemption from taxation as a building used exclusively for school purposes by the fact that the owner and his wife, who were both teachers in the school, resided in the building and that the owner permitted the use thereof on several occasions for entertainments, charging no more than the expense of the lights and the arrangement of the furniture and permitted other teachers in the school to reside there during the periods of their employment.

In *Midwest Bible & Missionary Institute v. Sestric,* 364 Mo 167, 260 SW2d 25 (1953), we find a case in substantial accord with the facts in the case at bar. There, the plaintiff Bible School brought action against the local tax officials for a declaratory judgment that three buildings in use by the school were exempt from taxation on the ground that they were "used exclusively" for these school purposes within the meaning of constitutional and statutory provisions. The plaintiff Bible School in that case was dedicated to the same purposes and teaching as is the Multnomah School of the Bible. The three properties in issue there were not contiguous to the school campus as is Tax Lot 440 here. The opinion reveals that in one building the plaintiff operated a heating system for the school laundry; that the first floor was occupied by the office of the Superintendent of Women with her living quarters and parlors of which were used by all students for student conferences, student meetings and social events. The second was a three-story building used to house a limited number of women students and four faculty members and their families, including the operating head of the school; that the faculty members resident therein also participated in the supervision and care of the students who might seek to confer with them; that the parlor rooms of the faculty members' quarters

in this second building were also used for student conferences, committee meetings and faculty meetings. The third building at issue in this Missouri case had two stories, a basement and attic, which housed some of the men students and the Dean of Men and a married student who tended the furnace and lived with his family in the basement room. The opinion further reveals that only students or faculty or staff members with families lived in any of the three buildings, and no part of any of said buildings was operated for commercial or business purposes or profit.

The Missouri court in the Midwest Bible & Missionary Institute case, following *State ex rel. Spillers v. Johnston,* supra, held: "*  *  * The uses made of the properties here in issue are not only intimately connected with the accomplishment of the plaintiff Institute's exclusive school and purely charitable purposes, but the properties are actually and exclusively used for such school and purely charitable purposes and such uses do not have for their purposes the making of any profit." (260 SW2d, supra, at 31.)

In *Emerson v. Trustees of Milton Academy,* 185 Mass 414, 70 NE 442 (1904), the court holds:

"*  *  * An occupation and use of real estate to produce income to be expended for the purposes for which the institution was incorporated is not within the statute, while an occupation whose dominant purpose is directly to accomplish some one of the objects for which the corporation was established is within it. If incidentally there are results of the use which would not entitle the property to exemption, that is immaterial, so long as the *dominant purpose* of the occupation is within the statute." (70 NE, supra, at 442) (Emphasis ours.)

In *Application of Thomas G. Clarkson Memorial C. O. T.,* supra (77 NYS2d at 185), the court states:

"The statute permits tax exemption of the property of an educational institution used 'exclusively' for carrying out one or more of its purposes. A cursory consideration of the authorities demonstrates that this state has not bound itself to a strict construction of the word 'exclusively'. We have recognized, as being within the statute's requirement of such an educational use, inter alia, dormitories, dining halls, armories, drill rooms, stables, recreation grounds, chaplains' and farmers' residences, all to the end that the statute should be so applied as to exempt the entire articulated system of an institution, and not merely 'the rooms or parts of buildings where tasks are conned or lessons recited.' \* \* \*."

Other jurisdictions faced with substantially the same facts and controlled by constitutions or statutes with provisions requiring the property be "exclusively used" for the purposes for which the organization was established have come to the same conclusion. See *Parker v. Quinn,* 23 Utah 332, 64 P 961; *State ex rel. Cragor Co. v. Doss,* 150 Fla 491, 8 S2d 17; *State ex rel. Spillers v. Johnston,* supra (113 SW at 1085); *Arnold College v. Town of Milford,* 144 Conn 206, 128 A2d 537; *Yale University v. Town of New Haven,* 71 Conn 316, 42 A 87, 93; *Ramsey County v. Macalester College,* 61 Minn 437, 53 NW 704.

The foregoing authorities compel the conclusion that the words "exclusively occupied or used," as employed in ORS 307.130, as amended, refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and

fulfillment of the generally recognized functions of such a charitable institution.

Applying this definition to the facts of the instant matter, we are of the opinion that any institution of learning, such as the Bible School, has a duty to give solicitude for the continuance of the health, safety and comfort of its students while under its domain and to the extent reasonably necessary to afford such protection by the proper maintenance of its plant and without interruption or delay in the use of its institutional facilities. The Bible School's superintendent of buildings and the supervisor of its dining hall were employees engaged in such essential functions. The appropriation of the building on Tax Lot 440 for the purposes used appears to us to be primarily and directly for the benefit of the school, although incidentally it may have contributed in a degree to the benefit and convenience of the school employees residing there. But even their convenience, as affected by their use of this residence on the school campus, was associated with the performance of duties in behalf of the school which would seem to render it highly expedient that they should reside where they do and not elsewhere.

■ We, therefore, hold that the school's parcel of real property known as Tax Lot 440 is exempt from taxation while subject to the uses of the kind revealed by the record.

In *Methodist Book Concern v. State Tax Commission,* supra, this court was asked to declare that the property of the Methodist Book Concern, operating in Portland (an enterprise similar to the Christian Supply Center), was exempt from taxation. At that time, as we have observed, the exemption statute in question limited the exemption to domestic corporations (Ore-

gon Laws 1949, ch 395, § 2, p 578, amended by ORS 307.130). The court there turned its decision on the fact that the Methodist Book Concern was a foreign corporation and consequently not entitled to the exemption. Speaking through Mr. Justice BRAND, we there said:

"* * * It will be time enough to determine the difficult and complicated questions concerning the tax status of domestic corporations which are engaged in enterprises in competition with private business, but whose profits are solely devoted to charitable purposes, when the issue is squarely presented by such a corporation." (186 Or, supra, at 610)

That issue, particularly in its relation to the operation of plaintiff's store, known as the Christian Supply Center, is now squarely presented but with the additional present legislative requirement that the determination of the nature of the "exclusiveness" of the plaintiff's use of its property be defined.

■ The Christian Supply Center is located several miles to the westward from the campus, at 805 Southwest Fourth Avenue, in Portland. We take notice that this is within the bounds of one of the city's largest retail business districts, an area including some of the biggest retail stores in the city. It is evident that its very location was not without design or consciousness of the mercantile advantage accruing, for, as said by the school president: "* * * in maintaining a downtown location you expect to attract customers generally just as any mercantile establishment * * *." The success in so doing is attested by annual sales of approximately $175,000, with profits from $10,000 to $15,000 per annum.

We have earlier observed that the Bible School was

incorporated as a nonprofit corporation (ORS 61.010 to 61.130, inclusive). ORS 61.010 provides:

"Corporations may be created under ORS 61.010 to 61.130 for any lawful purpose so long as they do not engage in any form of trade or commerce, or carry on any activity which will result in a remunerative profit to them or any of their members."

The school seeks to avoid the impact of this code section by the representation that all profits from the Christian Supply Center are immediately channeled back into the treasury of the school, where it is employed for the purposes for which the school was organized. No attempt is made to gainsay the truth of this assertion nor to depreciate the worthiness of such use. It is, however, a process without legal sanction and cannot be invoked in aid of the claimed tax exemption for this mercantile enterprise maintained by the school.

Long before the words "exclusive use" were written into ORS 307.130, this court early declared that such uses of earnings destroyed a claim of tax exemption as to properties owned and so used by institutions of a charitable and nonprofit character. *Hibernian Benevolent Society v. Kelly,* supra (28 Or 173); *Willamette University v. Knight,* 35 Or 33, 56 P 124.

The Hibernian Society case was the first decision of this court construing the exemption statute as it was from 1854 to 1945. The Society was a fraternal organization and the owner of a three-story building from whence it received rentals from tenants occupying all of the building for uses not incidental to its declared purposes except for one room reserved for the Society's office. Predicated on the charitable character of the organization and the use of the profits accruing in the furtherance of its charitable and

benevolent activities, it sought to have the building declared tax exempt. Mr. Justice ROBERT BEAN, speaking for the court, said:

"* * * It [ORS 307.130 as it was in 1895] does not exempt from taxation the enumerated institutions as such, or real estate simply because it belongs to such institutions, or even because it is used for literary, scientific, charitable, or benevolent purposes, but it expressly confines the right of exemption to such real estate only belonging to them as shall be actually occupied in a particular manner and for a specified purpose, and this right, therefore, clearly cannot be extended·to property occupied and used for other and different purposes, *although the revenue derived from its use is devoted exclusively to the objects for which the institution was established.* It is the actual occupancy of the property which determines its right to exemption, and not the use made of its proceeds. The plain and obvious meaning of the statute is that only the real estate actually occupied and in use by these different institutions for the purposes for which they were organized, shall be exempt from taxation. While so occupied and used, it does not come in competition with the property of other owners, and the purpose for which it is used was supposed by the legislature to be a sufficient benefit to the public to justify its exemption from the burdens of taxation imposed upon other property. But when such property is used for the purpose of accumulating money, the law imposes upon it the same burden of taxation as it imposes upon other property similarly situated. The statute does not undertake to discriminate between the uses which different socieities or individuals will make of the proceeds of their business, and determine for that reason that one shall be taxed and the other not. It deals with the property as it finds it, and not with what may be done with its proceeds in the future. * * *" (28 Or, supra, at 193) (Emphasis ours.)

See, also, *Willamette University v. Knight,* supra (35 Or at 46).

Notwithstanding that the statute construed in the two cases last mentioned was amplified by the 1955 amendment by the addition of the words "and exclusively occupied or used," we are of the opinion that the full force and effect of Justice BEAN's words are equally applicable to ORS 307.130, supra, in its present form.

We again turn to the California case of *Y. M. C. A. v. Los Angeles County,* supra (221 P2d 47), where certain portions of its various buildings in the county were held not exempt because part of the buildings were utilized in mercantile activity in selling goods and services to the general public. The fact that the profits from these operations were used for the charitable and benevolent purposes of the institution did not qualify those portions of the property so used to exempt status. There, the court said:

> "But conceding the praiseworthy motives underlying the establishment of these respective facilities as outlined by plaintiff, it must be remembered that the test for the * * * exemption is not the number of good purposes to which plaintiff's property may be put nor the amount of benefit that may be derived therefrom by plaintiff's members as well as the general public, but whether the property may reasonably be regarded as 'exclusively used' for exempt purposes * * *. That the money derived therefrom may be used exclusively for plaintiff's operational upkeep as a charitable organization * * * or that such facilities may be desirable in the promotion of plaintiff's general service plan does not alter the fact that they involve the use of portions of plaintiff's property for facilities which are not merely incidental to and reasonably necessary for the accomplishment of exempt purposes. * * *" (221 P2d, supra, at 56)

The relatively recent case of *Sunday School Board of Southern Baptist Convention v. McCue,* 179 Kan 1, 293 P2d 234 (1956), was a proceeding in mandamus by a nonprofit religious corporation to compel taxing officials to declare certain personal property exempt under a statute much like ORS 307.130. A part of the personal property consisted of the merchandise inventory and other items located at its place of business in Wichita, Kansas, known as the Baptist Book Store. There, as here, the plea was made that the profits went to plaintiff and were used to further the work for which it was organized. But, notwithstanding, the property of the book store enterprise was denied tax exemptions.

Other jurisdictions, with "exclusively used" requirements, have consistently held that the personal property of operations of this character are subject to ad valorem taxation. *Lutheran Book Shop v. Bowers,* 164 Ohio St 359, 131 NE2d 219 (1955); *Evangelical Lutheran Synod, etc. v. Hoehn,* 355 Mo 257, 196 SW2d 134 (1946); *Men's Hall Stores v. Dane County,* 269 Wis 84, 69 NW2d 213 (1955).

We hold plaintiff's business, known as the Christian Supply Center, is an enterprise for the purpose of business and profit which comes in direct competition with businesses of like nature and kind carried on elsewhere by other persons and does not comply with ORS 307.130, supra, so as to entitle it to the tax relief sought, even though its net gains flow to and are devoted by the Bible School to religion or education.

As to the tax exemption denied by the lower court on Tax Lot 440, it is reversed, and as to the denial of the tax exemption on the Christian Supply Center, it is affirmed.