# LEWIS & CLARK COLLEGE *v.*
## COMMISSION

Edward L. Epstein, Davies, Biggs, Strayer, Stoel & Boley, Portland, represented the plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, represented the defendant.

Decision for plaintiff rendered May 20, 1969.

EDWARD H. HOWELL, Judge.

Plaintiff's claim for an ad valorem property tax exemption for the residence of the president of the

college for the tax year 1968-69 was denied by the tax commission and plaintiff appealed.

The parties agree that Lewis and Clark College is exempt from ad valorem property taxation under ORS 307.130 which allows an exemption for such property owned by literary, benevolent, charitable and scientific institutions "as is actually and exclusively occupied or used in the  *  *  *  work carried on by such institutions."[1]

The issue presented is whether the official residence of the president of Lewis and Clark College should be included in the exemption allowed by ORS 307.130. The commission denied the exemption on the grounds that the president's residence was not "actually and exclusively occupied or used" in the work carried on by Lewis and Clark College.

In *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 343 P2d 893 (1959), the Oregon Supreme Court interpreted the phrase "exclusively occupied or used" as it appears in ORS 307.130. Applying the rule of strict but reasonable construction applicable in all exemption cases, the Supreme Court found that a building owned by the Multnomah School of the Bible was exempt. The lower portion of the building was occupied by the school's superintendent of buildings and the upper story by the school's dining hall supervisor. The building was also used for student activities, group meetings and prayer groups. The court stated that the words "exclusively occupied or used" as they appear in ORS 307.130 "refer to the primary purpose for

---

[1] The plaintiff in the alternative contends that it is entitled to the exemption under ORS 307.145 allowing exemptions to schools, academies and student housing. However, the decision herein makes it unnecessary to decide if plaintiff qualifies for such exemption under ORS 307.145.

which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution." 218 Or at 36-7.

In allowing the exemption the court found that the use of the building was primarily and directly for the benefit of the school "although incidentally it may have contributed in a degree to the benefit and convenience of the school employees residing there. But even their convenience, as affected by their use of this residence on the school campus, was associated with the performance of duties in behalf of the school which would seem to render it highly expedient that they should reside where they do and not elsewhere." 218 Or at 37.

The test established by the *Multnomah School* case as applied herein is whether the president's residence is reasonably necessary to the fulfillment of the functions of the college and if its use is primarily for the benefit of the college. Incidental personal benefit to the president and his family will not prevent the plaintiff from receiving the exemption if the other tests are met.

The residence, located approximately two miles from the campus, was acquired in 1965, partially as a gift. The chairman of the board of trustees testified that it was acquired for the primary use of the college as a residence for the president and that the president is required to live there. He considered it a necessary facility of the college.

The residence is a large four bedroom house well suited for reception and entertainment of guests. Dr. Howard, president of the college, testified that while the house is larger than he needs for his personal use,

it is occasionally used for family purposes. However, his duties as president require a residence of sufficient size to accommodate a large number of guests. He testified the residence was used for conferences involving the administration of the college, for student, faculty, alumni and community meetings, for fund raising gatherings and for the entertainment of visiting educators. From 1966 to 1968 the residence was used on 115 different occasions for official college business. During this period Dr. Howard's guests whose business was directly or indirectly related to the college numbered 670 in 1966, 1007 in 1967 and 733 in 1968. In addition, since 1966 at least one student has lived in the residence at no cost to the student.

Dr. Roy E. Lieuallen, Chancellor of the Oregon State System of Higher Education, testified that a residence for the president is highly important in carrying on the functions of educational institutions and is crucial in attracting and hiring a president.

■ The evidence clearly supports the plaintiff's contention that the residence is used primarily for the benefit of the college and that its use is reasonably necessary for the fulfillment of the functions of the college.

■ The fact that the residence is located two miles from the main campus is not important. The house is owned and maintained by the college and should not have to be within the college grounds if it meets all the other qualifications. According to Dr. Lieuallen's testimony other similar residences in Oregon are located from one-quarter to two miles from the respective campuses.

The conclusion that the residence for the president is exempt because its use is reasonably necessary to carry out the functions of the institution and is pri-

marily for the benefit of the institution also finds support in the following cases: *Serra Retreat v. Los Angeles County*, 35 Cal2d 755, 221 P2d 59 (1950) (living quarters for priests in retreat houses); *Y.M.C.A. v. Los Angeles County*, 35 Cal2d 760, 221 P2d 47 (1950) (dormitory rooms at Y.M.C.A.); *Church Divinity School v. County of Alameda*, 152 Cal App2d 496 (1st Dist 1957), 314 P2d 209 (1957) residence of faculty members of divinity school); *President, Etc., Harvard College v. Assessors of Cambridge*, 175 Mass 145, 55 NE 844 (1900) (residence of president); *Concordia College Corporation v. State*, 265 Minn 136, 120 NW2d 601 (1963) (faculty housing); *State v. Carleton College*, 154 Minn 280, 191 NW 400, 35 ALR 97 (1923) (residence of president); *Doane College v. County of Saline*, 173 Neb 8, 112 NW2d 248 (1961) (residence of president); *In Re Syracuse University*, 214 App Div 245 (Sup Ct App Div), 212 NYS 253 (1925) (residence of chancellor); *Appeal of University of Pittsburg*, 47 Pa 416, 180 A2d 760 (1962) (residence of chancellor located 2½ miles from school); *City of Meadville v. Allegheny College*, 131 Pa Super 343, (Super Ct 1938), 200 A 105 (1938) (residence of president).

The plaintiff is entitled to the exemption. The order of the commission is set aside.