## DIOCESE OF OREGON (THE PROTESTANT EPISCOPAL BISHOP OF OREGON) *v.* DEPARTMENT OF REVENUE

Robert A. Leedy, Barzee, Leedy & Tassock, Portland, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff, in part, rendered September 29, 1972.

HALL S. LUSK, Judge Pro Tempore.

This is a companion case to *Archdiocese of Portland in Oregon v. Department of Revenue,* this day decided, 5 OTR 111 (1972).

As in that case, the question is whether certain property is exempt from taxation pursuant to the provisions of ORS 307.130, 307.140 and 307.145. Plaintiff, Episcopal Diocese of Oregon, owner of the property, has appealed from an order of defendant, Department of Revenue, denying its claim of exemption for the 1970 assessment year.

The property involved, as alleged in the complaint and admitted in the answer, is described as Tax Lot 16 of Lot 9 of Abernethy Heights and Tax Lot 23 of Lots 8 and 10, Abernethy Heights, in Multnomah County, Oregon.

The pleadings are in agreement that plaintiff Diocese is an eleemosynary and religious corporation created and existing under the laws of Oregon for religious and charitable purposes. Its jurisdiction extends from the Washington border on the north to the California border on the south, the Pacific Ocean on the west to the summit of the Cascades on the east.

The property, which is located in a Portland suburb, was acquired in 1959 as a gift from the heirs of the late Peter Kerr, a Portland industrialist.

The former residence of Mr. Kerr on the land has been used by Diocese ever since acquiring it for administrative and other purposes connected with the religious program of the Episcopal Church. It has never been used for any commercial or profit-making purpose. The Oregon Churchman, a nonprofit newspaper, the official publication of the Diocese, is composed there, but printed elsewhere.

As explained by the witness, Bishop Hal H. Gross, Suffragan Bishop of the Diocese of Oregon, the former Kerr residence is the administrative center, the nerve center, of the many religious activities of the Episcopal Church in the Oregon Diocese. The function of the Diocese is to extend the Gospel of Jesus Christ throughout this area. It does so through "three primary areas, one, of preaching and celebrating the sacraments, two, through teaching and through healing." The evidence shows in some detail the relationship of the work done in the former Kerr home to these purposes.

■ I think it unnecessary to further review this evidence, and that it suffices to state my conclusion that this case is governed by the decision in the *Archdiocese* case—that (except as hereafter noted) the property here sought to be taxed is occupied and used by Diocese for the advancement of religion, a charitable purpose, and is exempt from taxation under ORS 307.130, which grants such exemption to incorporated literary, benevolent, charitable and scientific corporations.

The exception above referred to relates to a portion of the property on which there is a garage, with living quarters above, where a caretaker lives. Exemption from taxation had been allowed by Multnomah County from 1959 when Diocese acquired the property until 1970, to the extent of 95 percent of its value, a tax on five percent of value being levied because of the garage and its occupancy. Diocese has not contested this five percent retention for tax purposes, and it will, therefore, not be disturbed.

Though not necessary, I think it proper to indicate my views as to several other matters.

A large room on the first floor of the building referred to in the testimony as the living room has been converted into what is called St. Michael's Chapel. There is an altar at one end of the room and another room is used as a vestry. Religious services are held in the chapel each morning, Monday through Friday. The public are invited and occasionally members of the public attend these services, and always the staff. When services are not in progress, the altar is shut off from view by doors and the room is put to other uses, such as meetings. Assuming, as I would think to be the case, that this part of the structure is a "house

of public worship," within the meaning of ORS 307.140, it cannot be held to lend that character to the entire structure, as this is not the primary, but only an incidental use, and it is the former, not the latter, which determines the question of exemption from taxation. See *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 343 P2d 893 (1959).

Among its other activities in the Kerr house, Diocese furnishes administrative services to St. Helen's Hall, a school for girls, Bishop Dagwell School, a school for boys, and a number of parish day schools. In the case of *Archdiocese of Portland in Oregon v. Department of Revenue, supra,* the defendant, Department of Revenue, conceded that use of the second floor of the Chancery Office for similar purposes entitled that part of the building to exemption from taxation under ORS 307.130 and ORS 307.145. The latter section provides for exemption from taxation to educational institutions. To a question from the Bench as to why a similar concession should not be made here, counsel for the department answered that, unlike the other case, it is not possible under the evidence to determine what portion of the building is devoted to school administration and, therefore, no partial exemption on that account should be allowed. One claiming exemption from taxation has the burden of proof. *Assessor of Dover v. Dominican Fathers, Etc.,* 334 Mass 530, 137 NE2d 225, 230 (1956). My consideration of the evidence leads me to the conclusion that the position of the department on this issue is correct.

To the extent hereinabove indicated, the order of the defendant, Department of Revenue, is set aside.