IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax Exemption

| | | |
|---|---|---|
| CATLAND, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 111066C |
| | ) | |
| v. | ) | |
| | ) | |
| YAMHILL COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals the denial of a property tax exemption for property identified as Account 480483 (subject property) for the 2010-11 and 2011-12 tax years. By Order issued February 22, 2012, the court dismissed the appeal for the 2010-11 tax year. A telephone trial for the 2011-12 tax year was held on July 24, 2012. A. John Ochsner IV (Ochsner), President, Chief Executive Officer, and Director of Plaintiff, appeared and testified on behalf of Plaintiff. Brian A. Linke (Linke), Commercial Appraiser for Yamhill County Assessment & Taxation, and Jeff Ivie (Ivie), Chief Appraiser for Yamhill County Assessment & Taxation, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 50 and Defendant's Exhibit A were submitted without objection.

I. STATEMENT OF FACTS

A.    *Subject property*

The subject property is a 20 acre parcel located three miles north of Newberg, Oregon, owned by Ochsner and leased to Plaintiff. The following improvements are on the property: a one-and-a-half-story home, a manufactured home, a barn, a shed, a shop, and a recreational vehicle.[1] (Def's Ex A at 1.) Ochsner testified that he occupies the residence and that, as of the assessment date, he shared some of the space with 25 to 30 cats. Defendant's witness, Linke,

_____

[1] Ochsner testified that the shop and manufactured home are not used by Plaintiff, and they are not part of its exemption application. His exemption application, however, does not exclude those structures. (*See* Def's Ex A at 7.)

DECISION  TC-MD 111066C                                                                                    1

disputed the number of cats on the property, testifying that when he inspected the property he saw only about 10 to 12 cats, and that most, if not all, had names. Linke further testified that the cats are fenced in and cannot get to the "wildlife" area. In Linke's opinion, the property is no different than many other rural properties, having a private residence in the woods with a few pet cats and a gate that excludes the public. Also, when cross-examined by Ivie, Ochsner testified that he is not a veterinarian or a veterinarian's assistant, and that he has no relevant education.

Ochsner testified that the manufactured home is rented by a "relative" who pays rent to Plaintiff.[2] (*See* Ptf's Ex 35 (reporting as income to Plaintiff three monthly rent installments of $150 each for October, November, and December 2011).) When questioned on cross-examination, Ochsner testified that the relative renting the manufactured home is his sister, who is also on the board of his organization, CatLand (the Plaintiff in this appeal).

The barn is purportedly a shelter for wildlife, such as birds, raccoons, squirrels, and one llama, but the barn also stores items such as a sink, chairs, ladder, lumber, and woodworking equipment. (Def's Ex A at 2, 23.) Other items on the property include several animal shelters (equipped with heat and a sources of fresh water), and at least eight vehicles are "scattered about the property * * *."[3] (*Id.* at 2, 3; *see e.g.*, *id.* at 39 (photographs of the subject property showing several vehicles stored in grassy areas).)

Ochnser testified that cats should never roam free as they are a threat to other wildlife, especially to birds that nest on the ground. As such, some areas of the subject property are fenced. There is a one-quarter acre area abutting the residence containing three animal shelters and another 0.42 acre area with a shelter and litter box for those animals with the fatal disease

/ / /

---

[2] Ochsner did not explain how a tenant is permitted at all, given that Plaintiff's lease of the property states that the premises "cannot be subleased to any other party or organization * * *." (Def's Ex A at 11.)

[3] Ochsner reported that a recreational vehicle located on the subject property is used by the tenant to house cats.

Feline Infectious Peritonitis (FIP). (Ptf's Ex 1 at 40, 28,29.) It was not clear to the court whether there were any animals with FIP living within the enclosure.

Both parties submitted photographs of the interior of the one-and-a-half story home (Ochsner's residence). (Ptf's Exs 36-39; Def's Ex A at 21, 27-38.) The photograph of the lower level of the garage depicts a vehicle, bicycles, tools, and equipment; the photograph of the upper level depicts musical equipment, a couch, and storage bins (Defendant reports that the upper level serves as Plaintiff's employee lounge, but there was no evidence of employees). (Def's Ex A at 21.) The photographs of the kitchen present both human and animal living space. (*Id.* at 27 (photographs depicting a counter-top watering and feeding station as well as a refrigerator, a stove, dishes, and cupboards containing human food such as the candy "Dots").) Photographs of the living room show similar co-habitation – feeding stations, litter boxes, cat beds, chairs, tables, lamps, a speaker, and storage bins. (*Id.* at 29-31; Ptf's Ex 37.) The main floor bedroom and hallway contain cat beds, feeding and watering stations, and animal carriers. (Def's Ex A at 33-34.) The photographs of the upstairs of the home depict an office, two bedrooms with feeding stations, cat shelters, a carpeted post, and a bathroom with a litter box and a feeding station. (*Id.* at 35, 36.) Defendant testified that one of the bedrooms was blocked with a gate at the door because of the feral cat inside. There was no testimony as to exactly what portion of the home Ochsner occupies, but he testified that, in his opinion, living on property leased by Plaintiff is inconsequential to the court's determination.

Ochnser testified that the basement is kept free from cats, as it is a " 'safe haven' for mice[,]" "a break room for volunteers[,] and a work area for constructing cat shelves." (Def's Ex A at 2; Ptf's Ex 46.) Photographs show a room with a pool table, a bathroom, an office, a utility room with animal traps, a vacuum cleaner, paint canisters, and the like. (Def's Ex A at 37, 38.) Ochnser claims that those areas are used in Plaintiff's operations. For example, the pool table is used as a work station to cut boards for cat shelves. (Ptf's Ex 39.)

Defendant points out that the subject property is not "open to the public" as the term is commonly used; there are no signs to invite the public to contact anyone about opportunities to enjoy the wildlife on the property, and, in fact, the gated driveway prevents vehicles from driving up to the animals' structures without assistance. (Def's Ex A at 1.) Ochsner responded that the public is free to enjoy the wildlife area on the subject property from the highway, and that it is not uncommon for a vehicle to pull over to the shoulder of the road and the occupants to get out and look at his property. (Ptf's Ex 1 at 38.)

B.    *Plaintiff's organization*

Plaintiff is a corporation "organized for the charitable, scientific[,] and educational purposes of Animal Welfare & Wildlife Conservation." (Def's Ex A at 8, 9.) Plaintiff is exempt from federal income tax under Internal Revenue Code section 501(c)(3). (Ptf's Ex 42.) Its activities "include providing food, water, shelter, and sanctuary to homeless animals and wildlife[,]" primarily stray or feral cats. (Def's Ex A at 9.) Ochsner testified that Plaintiff utilizes volunteers, advertises on a website, participates in the Yamhill County Cat Coalition, educates the public, and accepts donations. (*See* Ptf's Ex 1.) Ochsner also testified that Plaintiff does not charge for any of its services.

Ochsner testified that the primary purpose of Plaintiff is to prevent the spread of disease from feral cats to other healthy animals. To that end, Ochsner provided printed pages of internet commentary on issues such as "the feral cat problem in McMinnville" and copied excerpts from various web pages. (Ptf's Exs 12, 13, 17-22; *see, e.g., id.* at 21 (excerpt from www.peta.org regarding that organization's view that feral cats should be isolated from sources of harm).) Plaintiff provided articles published by the American Bird Conservancy on www.abcbirds.org titled "Domestic Cat Predation on Birds and Other Wildlife," "The Great Outdoors is No Place for Cats," and "Trap, Neuter, Release: The Wrong Solution to a Tragic Problem." (Ptf's Exs 23-25, 31.) There is also a report from the Oregon State University Veterinary Diagnostic

DECISION  TC-MD 111066C                                                                                                          4

Laboratory, diagnosing Ochsner's cat "Lisho" with the fatal disease FIP in 2002. (Ptf's Ex 27.) Information about FIP – whether it's contagious, signs and symptoms of the disease, etc., was also provided. (Ptf's Ex 28 - 29.) Ochsner testified that there is no definitive test for FIP at this time.

To support Plaintiff's contention that its purpose is a laudable one, Ochsner presented emails from Congressman David Wu and United States Senator Jeffrey A. Merkley (Merkley) thanking Ochsner for sharing his thoughts on the following: cuts to conservation programs, the threat of mining to the Grand Canyon, the regulation of polluted stormwater runoff, and the conservation of a farm bill – all issues related to protecting wildlife. (Ptf's Exs 14-16; *See also id.* at 3 (letter from Merkley to Better Lives for Cats volunteers).) Ochsner also presented affidavits from individuals who sought help finding homes for cats. (Ptf's Exs 5-8, 44, 45, 49, 50.) The following is a list of each affidavit and a short summary of its content (all affidavits contain the identical opinion that Plaintiff's efforts constitute "giving" and that Plaintiff "provides a benefit to the public and community at large"):

> 1) Affidavit of Janet Zeider, dated January 12, 2012, attesting to Ochsner's willingness to take custody of various stray cats ("Pumpkin," "Sam," and "Cinder," "See Spot Canter") at some point in the past at Ochsner's previous residence and at the subject property.
>
> 2) Affidavit of Angela Creech dated December 14, 2011, attesting to Ochsner's willingness to take custody of a stray cay, "Sasha," at the subject property around September 2010.
>
> 3) Affidavit of Julie Allen dated November 15, 2011, attesting to Ochsner's willingness to take custody of her cats "Char" and "TK" at the subject property around November 2011.
>
> 4) Affidavit of Cuma Hall dated December 8, 2011, attesting to Ochsner's willingness to take custody of a "colony of about eight feral cats" at the subject property around November 2011.
>
> 5) Affidavit of Chuck Dunn dated July 9, 2012, attesting to Ochsner's willingness to take custody of stray cats "Tom Tom," "Snowball," and Snowball's kittens at the subject property around December 2011. Snowball was later returned to her human family.

6) Affidavit of Dona Richardson dated July 9, 2012, attesting to Ochsner's willingness to help Cuma Hall and his willingness to take custody of stray cat, "Eddie," at the subject property at some point in the past.

7) Affidavit of Don Borlaug (Borlaug) dated July 2, 2012, attesting to Ochsner's efforts to adopt out and deliver three feral cats to Borlaug, along with cat beds, blankets, feeders, cat food, water bowl, litter boxes, and cat litter around December 2011.

8) Affidavit of Marcy McDowell (McDowell), Vice-President on the Board of Directors for Homeward Bound, dated July 13, 2012, attesting to Plaintiff's receipt of donations from Homeward Bound. McDowell's affidavit also states that she was present at Defendant's inspection of the subject property, that the two upper floors of the house are used by cats, and that she has referred those seeking homes for cats to Plaintiff.

(*Id.*)

Ochsner presented lists of Plaintiff's income and expenses for 2010 and 2011. (Ptf's Exs 34, 35.) Reportedly, Plaintiff had no income in 2010 and $6,520 in expenses for security, medications, veterinary fees, food, litter, gas used to transport cats, etc. (Ptf's Ex 34.) In 2011, Plaintiff had $1,125 in income from rent and unspecified donations. (Ptf's Ex 35.) Ochsner testified that the donations came from several donors, but that he preferred to keep the sources anonymous. Expenses for 2011 included items similar to those in 2010, totaling $5,694. (*Id.*) Ochsner offered no explanation as to how Plaintiff affords to operate given the great disparity between its income and its expenses, except to say that "the funds come from [his] own pocket." Ochsner did not provide any receipts for any of Plaintiff's expenses.

## II. ANALYSIS

"[A]ll real property in Oregon is taxable unless specifically exempted." *Serenity Lane, Inc. v. Lane County Assessor*, TC-MD No 101243C at 10 (Mar 7, 2012); see also ORS 307.030.[4]

/ / /

/ / /

---

[4] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

Plaintiff seeks an exemption under ORS 307.130 as a charitable organization. ORS 307.130 provides, in pertinent part:

> "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

> "(a) Except as provided by ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

Because Plaintiff leases the property from Ochsner, Plaintiff must satisfy the requirements of ORS 307.112, a statute extending property tax exemption to qualifying entities that lease or sublease property from taxable owners, provided the organization has been "granted exemption or the right to claim exemption for any of its property under ORS 307.130 * * *." Among the requirements for lessee is that they use the property "in the manner, if any, required by law for the exemption" and that the parties "expressly agree[] within the lease * * * agreement that the rent payable by the institution * * * has been established to reflect the savings below market rent resulting from the exemption from taxation." ORS 307.112(1)(a) (b). The court's focus in its analysis is primarily on the use of the property.

To determine whether a taxpayer is allowed an exemption, the court follows the principle that property tax exemption statutes are strictly but reasonably construed. *SW Oregon Pub. Def. Services v. Dept. of Rev.* (*SW Oregon*), 312 Or, 82, 88-89, 817 P2d 1292 (1991) (citation omitted). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *North Harbour Corp. v. Dept. of Rev.* 16 OTR 91, 95 (2002) (citation omitted).

/ / /

/ / /

The Oregon Supreme Court has stated that, taken together, Oregon case law and Department of Revenue rule OAR 150-307.130-(A) "indicate that there are three elements to qualifying as a 'charitable institution' under ORS 307.130: (1) the organization must have charity as its primary, if not sole object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *SW Oregon*, 312 Or at 89.

Satisfying the element of "gift or giving" requires proof that the property is used primarily for charitable purposes. OAR 150-307.130-(A)(4). The rule states, in pertinent part, "[t]he use of the property must substantially contribute to the furtherance of the charitable purpose and goal of the organization. * * *. Only the portion of a property used for [charitable purposes] shall be granted an exemption * * *." OAR 150-307.130-(A)(4)(d)(A), (B). Statute and rule contemplate a scenario where "[p]roperty may be in part taxable and exempt." OAR 150-307.130-(A)(4)(d)(B); ORS 307.130(2) (providing a property tax exemption only for "such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions").

In cases regarding exemptions for residences, the court analyzes whether the residence serves an essential function of the organization. *See e.g., Mult. School of Bible v. Mult. Co.*, 218 Or 19 343 P2d 893 (1959) (holding that a residence occupied by two college employees was exempt because the employees were required to live on campus and their function was essential to the mission of the college). If the taxpayer cannot establish that the residence and its occupation are essential to the organization's charitable purpose, exemption is denied. *See e.g., Golden Writ of God v. Dept. of Rev.*, 300 Or 479, 486 713 P2d 605 (1986) (denying an exemption of a farmhouse occupied by adherents and stating that the residence was like any other, "no different from the farms and homes in which millions of Oregonians have meditated and prayed since this state was founded in 1859").

DECISION TC-MD 111066C                                                                                        8

"The burden of establishing entitlement to an exemption is on the taxpayer claiming the exemption." *SW Oregon*, 312 Or at 88 (citation omitted). "[A] preponderance of the evidence shall suffice to sustain the burden of proof." ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted). "In close cases, exemptions must be denied." *Washington Co. Assessor II v. Jehovah's Witnesses*, 18 OTR 409, 422 (2006) (citation omitted).

Plaintiff failed to carry its burden in several respects. Plaintiff has not established that it was involved in a qualifying activity as of the assessment date (January 1, 2011). Moreover, the court found Ochsner's testimony to be vague and evasive, at times misleading, and in some instances simply not credible. It is not clear to the court that Plaintiff is operating in a manner that furthers the objective of "Animal Welfare & Wildlife Conservation." The affidavits show that, over time, Ochsner has arranged custody for 21 cats (plus Snowball's litter), many of which he agreed to care for at the subject property. Evidence shows that many cats continue to be cared for at the subject property; there are many feeding stations, litter boxes, and cat beds within the residence; Ochsner has built outdoor shelters with heat and watering systems; Plaintiff lists veterinary care and animal supplies as expenses. However, there is no convincing evidence that those cats carried disease or posed a specific threat to wildlife, or that there is particularly vulnerable wildlife on the subject property requiring protection from cats. In fact, Ochsner testified that at this time there is no definitive test to determine if a cat is infected with the fatal and contagious disease FIP.

Ochsner presented many articles and excerpts to support his belief that preventing cats from roaming free protects wildlife. Although that may be, and likely is, true, the court is not convinced that Plaintiff's intermittent acceptance of new cats sufficiently promotes wildlife

/ / /

protection or animal (cat) welfare. Furthermore, the court is not persuaded that the cats on the property are anything more than pets, Ochsner's testimony to the contrary notwithstanding.

The evidence before the court shows that members of the public can only access Plaintiff's services through word-of-mouth, that is, if they happen to speak to someone who is familiar with Plaintiff. Plaintiff does not advertise. Additionally, the public education that Ochsner performs on Plaintiff's behalf does not take place on the subject property, and occurs only on rare occasions. The court is not convinced that Plaintiff's operations have anything to do with protecting wildlife or animal welfare on the whole, except for the care and custody of cats, some of which were given to Ochsner because the owner was unable or unwilling to continue to care for the animal.

Furthermore, Plaintiff has not established the element of gift or giving. Although Plaintiff's affiants repeat the same form language to that effect (that Plaintiff – actually Ochsner – provides services that constitute valuable gifts), the standard the court uses is that set forth by the applicable law, not conclusions of third parties who do not testify and who have not been shown to be qualified to render such opinions, which are, in the context of this case, legal conclusions, or that the affiants are sufficiently personally knowledgeable to form an opinion on the matter. In part, Plaintiff must show that the subject property is "used *primarily* for *charitable* purposes." OAR 150-307.130-(A)(4) (emphasis added). On the contrary, the court finds that the evidence plainly shows that the subject property is used primarily as Ochsner's residence, as well as that of Plaintiff's tenant (who is Ochsner's sister), as storage space for vehicles and equipment presumably owned by Ochsner, and as living space for Ochsner's pet cats and llama. Plaintiff did not offer sufficient explanations for how any of the ancillary activities on the subject property are used to further animal welfare or wildlife conservation. Plaintiff did not sufficiently explain why areas such as the garage, which is Ochsner's personal storage space for a car, bicycles, tools, etc., was not excluded from Plaintiff's exemption application. For the subject

DECISION TC-MD 111066C                                                                 10

property to qualify for a property tax exemption under the strict but reasonable standard, Plaintiff must show that, of all the uses of the subject property, the primary use is to further animal welfare and wildlife conservation. Plaintiff has failed to do so.

### III. CONCLUSION

After careful review of the evidence, the court concludes that Plaintiff failed to prove that it was involved in a qualifying charitable activity as of the assessment date or that the subject property was used primarily for a charitable purpose. Thus, the subject property does not qualify for property tax exemption under ORS 307.112 and ORS 307.130. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal for the 2010-11 tax year is dismissed;

IT IS THE FURTHER DECISION OF THIS COURT that Plaintiff's appeal for the 2011-12 tax year, which seeks property tax exemption for certain real property identified in the assessor's records as Account 480483, is denied.

Dated this ____ day of October 2012.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on October 30, 2012. The Court filed and entered this document on October 30, 2012.*