Argued May 7, reversed and remanded June 26, 1975

SOCIETY OF ST. VINCENT DePAUL, OF
PORTLAND, OREGON, INC., *Appellant, v.*
DEPARTMENT OF REVENUE, *Respondent.*

537 P2d 69

*Eugene E. Feltz,* Portland, argued the cause for
appellant. With him on the brief were Steven H.
Smith and Casey, Palmer, Feltz & Sherry.

*Gerald F. Bartz,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Theodore W. deLooze, Chief Tax Counsel.

McALLISTER, J.

In June 1972 plaintiff, the Society of St. Vincent DePaul of Portland, Oregon, Inc., acquired a building in Portland in which to carry on its benevolent and charitable activities and filed a claim for exemption from ad valorem property taxes for the tax year 1972-1973. The Multnomah County Department of Assessment and Taxation denied plaintiff's claim and on appeal the Oregon Tax Court affirmed. The plaintiff appeals from the judgment of the Tax Court. We reverse.

Plaintiff is incorporated under the laws of Oregon for benevolent and charitable purposes, including aid to physically, mentally and emotionally handicapped individuals through occupational rehabilitation activities of an educational and therapeutic nature, including the maintenance of a sheltered workshop pursuant to ORS 344.710.[1] Prior to obtaining the property in question, plaintiff had operated for many years a sheltered workshop on Powell Street in Portland.

For more than a year prior to June 1972 the plaintiff had planned to enlarge its charitable activities by obtaining a building which would provide space for both a sheltered workshop and a work activities program for handicapped and mentally retarded individuals referred to in the record as "clients". An

___

[1] " 'Sheltered workshop' means a nonprofit facility established and operated by a private organization, agency or institution to provide vocational training, employment opportunity and employment for disabled and severely handicapped individuals."

administrator for the new program was hired in 1971 and $15,000 was allocated to fund the program.

Early in 1972 a suitable property owned by Mr. Henry Casey was found on Northeast Union Avenue in Portland. The two-story building had been designed for use as an automobile sales agency. The main floor consisted of a showroom in front and an automotive shop in the rear. It appeared to plaintiff that the property could be used for its purposes on a small scale without remodeling.

The owner first agreed to sell the property, including the land and building, and later decided to donate the property to plaintiff. On or about June 15 Mr. Casey gave plaintiff possession of the property and delivered the keys to a member of plaintiff's executive committee. The deed to the property was received by the plaintiff on June 29, 1972 and was recorded on the following day. Plaintiff also on June 30 filed an application for exemption to the Multnomah County Department of Assessment and Taxation.

In June 1972, soon after plaintiff took possession of the property it helped Mr. Casey remove from the building some personal property which he had stored there. Plaintiff then moved in a desk and chair and had a telephone installed. It also moved into the building a few appliances which were intended for use in training the handicapped persons served by it.

Before plaintiff acquired the property it had been used by a maker of fiberglass boat hulls. In June 1972, soon after acquiring possession of the building plaintiff put two or three of its clients to work cleaning up the building. It was found that the building was so impregnated with fiberglass that it could not be cleaned properly by unskilled labor and plaintiff hired professional cleaners to finish the job.

In July Mr. Larry Brace, the exemption super-

visor from Multnomah County, made three visits to the property to investigate plaintiff's claim for exemption. On July 12, 1972 he made his first visit and found the building locked and unoccupied. A second visit on July 17 yielded the same result. On his third visit to the premises on July 20, 1972 he was accompanied by his supervisor, Mr. Ayers. After meeting Mr. Royer, the executive secretary of plaintiff, they conducted an inspection of the premises. Mr. Brace in his report noted that none of the offices were occupied and that the building was "extremely dirty". He did note, however, that one rehabilitation student was on the premises refinishing the desk and chair. In addition to the desk and chair "there were two old water heaters, three bed springs leaning against the wall, one bed mattress, an electric stove, and one bedstead." Based on these observations Mr. Brace recommended that the application for exemption be denied and that the property be taxed for the tax year 1972-1973. This recommendation was approved by the Department of Assessment and Taxation and on appeal was affirmed by the defendant on the ground "that the subject property was not converted to a tax exempt use by July 1, 1972", the date of assessment.

From the time plaintiff obtained possession of the building it continued its efforts to devote the building to the use for which it had been acquired. As the Tax Court correctly noted in its opinion, from the time plaintiff obtained possession of the premises "immediate steps were taken to secure the exemption and to put the building into use as rapidly as possible." On August 10, 1972, a contract for adding additional toilets and facilities for wheelchair patients was let. By October, 1972, representatives of plaintiff had obtained work from Coca-Cola Company, Tektronix, Inc., Graphic Arts, DelMonte, Freightliner Corp., Omark Industries, Inc., and others, and within six months after July 1, 1972 was serving 30 clients daily. In October,

1972, the State of Oregon also issued a formal contract authorizing plaintiff to conduct a sheltered workshop in its newly acquired building.

Plaintiff's progress in developing its use of the property was necessarily slow because of its lack of finances. The man in charge of the project, Mr. Comerford, testified as follows:

"A  We came into a—to an empty—except for our stuff, we came into an empty structure. Everything else—everybody else's stuff was out and ours started to come in.

"Q  Now, with respect to the refrigerator and equipment, are these items that are worked upon by handicapped—

"A  They're used for training purposes.

"Q  Did you move more things in in July and August and September of 1972?

"A  Oh, we kept moving. See, we didn't have anything to move in. Before we could get a second desk in there we had to get a second desk and this was part of my job, going out and soliciting these things because we didn't have money to buy this sort of equipment and I went out and I got some desks and I got some furniture, and so on, and as we acquired it, we moved it in.

"Q  Were you in and out of the premises very many times in June of 1972?

"A  Oh, yes, in and out all the time. Most of my work was out because I was out soliciting material and soliciting funds, and so on. Our director was in and out. He was talking to the state about the program.

"Q  Were you working very fast in this process of trying to get it started?

"A  As fast as we could with the funds we had available, yes. We haven't slowed down yet. We're still working."

The controlling statute is ORS 307.130, which reads in pertinent part as follows:

"Upon compliance with ORS 307.162 [filing claim for exemption], the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1) * * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."[2]

The simple issue is whether the property on the assessment date, July 1, 1972, was "actually and exclusively occupied or used" by plaintiff in the benevolent and charitable work carried on by it.

In *Willamette Univ. v. Tax Comm.*, 245 Or 342, 422 P2d 260 (1966), this court construed ORS 307.130 to allow an exemption for a building which was under construction but not yet completed. We find that case controlling here. In this case the plaintiff had a completed building and initiated its occupancy thereof prior to July 1, 1972, and continued thereafter to expand and develop its use of the building as rapidly as possible, with the result that within a few months after July 1, 1972 it had in operation a sheltered workshop and related programs.

Defendant relies on *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972), but we find that case inapposite. In that case the hospital had adopted a long-range master plan for future expansion of its facilities, but had not yet commenced construction of any of the new facilities. We de-

---

[2] The Tax Court, in denying plaintiff's claim for exemption, relied, in part, on ORS 307.130(3). We believe the Tax Court's reference to this subsection was unnecessary since the property in question clearly falls within the broad language of ORS 307.130(1).

clined to extend our holding in *Willamette Univ.* to include vacant land held for use in the indefinite future, but on which construction of facilities had not yet begun.

We find that on the assessment date, July 1, 1972, plaintiff had occupied the building and was actually using it in the beginning stages of its plan to devote the building exclusively to a sheltered workshop and related activities. Courts from other jurisdictions having similar statutory provisions are in accord with our finding in this case. Thus, exemptions have been allowed in cases involving the acquisition by a charitable organization of property containing a building which had to be converted, repaired, or remodeled before it was suitable for its actual use for an exempt purpose. *Carney v. Cleveland City School Dist. Public Library,* 169 Ohio St 65, 157 NE2d 311 (1959); *Application of Magnetic Springs Foundation,* 165 Ohio St 180, 59 Ohio Ops 239, 134 NE2d 152 (1956); *Hedgecroft v. City of Houston,* 150 Tex 654, 244 SW2d 632 (1951); *Good Samaritan Hospital Ass'n v. Glander,* 155 Ohio St 507, 44 Ohio Ops 452, 99 NE2d 473 (1951); *Village of Hibbing v. Commissioner of Taxation,* 217 Minn 528, 14 NW2d 923, 156 ALR 1294 (1944); *Annotation, Property Tax Exemption— Prospective Use,* 54 ALR3d 9, 76-80.

The judgment of the tax court is reversed and the case remanded for the entry of a judgment allowing plaintiff's claim for exemption for the tax year 1972-1973.