REORGANIZED CHURCH OF JESUS CHRIST
OF LATTER DAY SAINTS *v.*
DEPARTMENT OF REVENUE

Leslie Roberts, Kell, Alterman & Runstein, Portland, represented plaintiff.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered September 15, 1976.

CARLISLE B. ROBERTS, Judge.

The plaintiff, a religious organization, sought

exemption from property taxation of certain recently acquired improved property for the tax year 1974-1975. Appealing to the defendant pursuant to ORS 306.520, plaintiff sought reversal of the determination of taxability made by the Division of Assessment and Taxation, Multnomah County. Plaintiff was denied relief by the defendant's Order No. VL 75-329, issued June 17, 1975. In its petition to defendant, plaintiff also contended that Multnomah County's assessment of value of the subject property of $346,000 (property which had recently been purchased by plaintiff for $170,000) was in excess of the fair market value and it "reserved the right to file a supplemental petition on valuation if the claim of exemption were denied." No action on this second issue was taken by the defendant and plaintiff again requested that this issue be "reserved."

The court's consideration of the first issue has been aided by the briefs of counsel and a brief amicus curiae on behalf of the City of Portland.

The subject property is located at the intersection of N. E. 50th and Couch Streets in Portland and consists of land and improvements which had been used by the Western Oregon Conference Association of Seventh-Day Adventists as a church school. The property is identified as Assessor's "Account No. 94231-1060, Sec. 31 1N 2E TL #106, containing 1.25 acres of land; Account No. 94231-2150, Sec. 31 1N 2E TL #215, consisting of .44 of an acre; Account No. 81100-0480, excluding N 8.5′ in E. Couch Street, Lot G, Sunnyslope; Account No. 81100-0110, TL #8 of Lot 5, A & C, E, Sunnyslope, Multnomah County, Oregon."

It was stipulated by counsel that: "[a]t all times relevant to this case, the zoning ordinances of the City of Portland required that Plaintiff apply for and obtain a Conditional Use Permit, issued by the Port-

land Planning Commission, for use of the subject property as a church, before putting the property to that use."

The court finds the following facts to be true: The Portland Metropolitan Branch of the Reorganized Church of Jesus Christ of Latter Day Saints was created to consolidate several units of its growing organization into one congregation and sought property suitable for that purpose. In September 1973, in furtherance of this project, the plaintiff agreed to purchase the subject property from the Seventh Day Adventists for $170,000, possession of the property to be delivered to the purchaser on June 30, 1974 (the seller's school year ending on May 30). The buyer fully expected to be able to use the property for church purposes in June, even while renovation of the buildings was being made. On November 1, 1973, it submitted to the Portland Planning Commission its application for conditional use of the property for church purposes. This application was scheduled for action by the commission on February 26, 1974. Although the formal contract with seller was not executed until February 19, 1974, the plaintiff immediately began making its plans for full utilization of the property. In February 1974, the balance of the contract price was paid in full. On April 10, 1974, plaintiff filed an impact proposal with the Portland Planning Commission as required by the commission. On April 15, 1974, the plaintiff met with Southeast Uplift Program, a neighborhood association, to discuss its plans and to invite comment and criticism, as required by the commission. On April 18, 1974, the board of the Southeast Uplift Program recommended to the Portland Planning Commission that it approve plaintiff's requests, the recommendation being based on a neighborhood survey indicating a positive response to the proposed activities of the church. A meeting was then

held by plaintiff with the Portland Planning Commission on April 23, at which time plaintiff presented an addendum to the impact proposal of April 10, 1974. On June 1, 1974, the Seventh Day Adventists began moving out of the buildings on the property and the plaintiff began doing yard work and moved in furniture and office equipment to be used in its activities. On June 2, 1974, the Portland Planning Commission held its first public hearing on plaintiff's petition. On June 24, 1974, on advice of counsel, plaintiff applied to the county for the property tax exemption provided by ORS 307.140 and 307.162.

On June 30, 1974, plaintiff was in full possession of the property, as provided in the sales contract of February 1974, but was legally forbidden to activate its plans respecting renovation and full utilization of the improvements and parking space pending approval by the Portland Planning Commission and the City Council of the City of Portland.

In the real estate sales contract executed on February 19, 1974, the following statement is found: "6. *Exceptions:* Buyer is aware that the three classroom addition on the brick building facing N.E. 50th Avenue, is subject to a temporary conditional use permit, and buyer takes subject to said permit." It appears that the seller had obtained a temporary conditional use permit from the City of Portland to build an annex containing three classrooms in 1959. The terms and limitations of the permit were not made clear in testimony before this court but it appears that when the matter was brought to the city's attention, upon the change of ownership, the expectation of the city's agents was that this "temporary" annex would be razed. Plaintiff petitioned for a continuation of the use of this structure, representing that the building was of quality construction, permanent

in nature, separately heated, with great potential utility to the purchasers and that it would be renovated in keeping with the exterior improvements contemplated for the other structures on the premises. A further question was present in that two or three members of the community had raised objections to the proposed church, based upon expected traffic impact and aesthetics. (A survey of the householders in the vicinity indicated that the great majority of those who had voiced opinions favored the community-centered programs which the church had offered.)

At the request of the Portland Planning Commission, plaintiff retained an expert to prepare a traffic-parking impact report, to be submitted August 4, 1974. In June, July and August, plaintiff engaged in cleaning and maintenance work on the premises, moving some furniture into the buildings and, as plaintiff's president testified, doing "anything we could do legally." The traffic report was submitted to the Portland Planning Commission on the requested date.

Plaintiff's application to Multnomah County for property tax exemption pursuant to ORS 307.140, required by ORS 307.162, was delivered by plaintiff and received by Herbert A. Perry, Assessor and Tax Collector, Multnomah County, on June 28, 1974.

The Exemption Field Supervisor of the Department of Assessment and Taxation, Multnomah County (the only witness on behalf of the defendant) testified that, in response to the plaintiff's petition for property tax exemption, he inspected the land and buildings on July 19, 1974. (He had to contact the church's office at 621 N. E. 76th Street, Portland, to gain access.) He saw furniture which he deemed to be Seventh Day Adventists' "leavings," but made no inquiry on that point. He understood that the plaintiff

"was having problems with zoning." He saw some roofing rolls and in some way knew that the City of Portland had given permission to the plaintiff to repair some roof leaks, although the Portland Planning Commission had not yet approved church-use of the structure. This was virtually the whole of his testimony. Such activity as he saw was deemed insufficient by him to categorize the property as currently "used," hence his recommendation for rejection of the plaintiff's application for exemption.

On August 12, 1974, the county's Division of Assessment and Taxation wrote to the plaintiff:

"An investigation was made by our office on July 19, 1974 in order to determine the status of the property for which the claim for exemption was made. It was found, that due to neighboring property owners objections to the general proposed usage of the property, your organization had been unable to occupy and use the facilities by the deadline of July 1st. As ownership alone is not a qualifying factor, we must advise your application is being denied and these properties will be fully taxable for 1974-75 under the provisions of ORS 307.140."

The county assessed the property at a true cash value of $346,000.

The meeting of the Planning Commission set for August 4 was postponed, the commission determining that no August meeting should be held. On September 3, the plaintiff received approval from the Planning Commission of its plans except as to the annex containing the three classrooms. On September 10, the plaintiff received further notice that it could fully utilize the property and place its plans in operation, with this one exception. Approval of the use of the annex was recommended by the Planning Commission on December 3, 1974, and reaffirmed on December

12, 1974, and approval was subsequently granted by the City Council.

In making its decision, the defendant relied on the authority of two cases: *Willamette Univ. v. Tax Com.*, 245 Or 342, 422 P2d 260 (1966), *aff'g* 2 OTR 246 (1965); and *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972), *aff'g* 4 OTR 410 (1971). In the *Willamette Univ.* case, the Oregon Supreme Court held that property is exempt from local taxation during the period of construction, changing the rule formerly followed by the counties (based on opinions of the Attorney General) that the construction must be complete and the property in actual use for the purposes for which it was built by the exempt organization before application for exemption could be approved by the county assessor. The court held that the reasonable construction of the words "actually and exclusively occupied or used" in the work carried on by the exempt institution was met when the premises were being prepared to carry out the purposes of the exempt charity. This decision would appear to support plaintiff's cause. The *Eman. Luth. Char. Bd.* case struck down a request for exemption of property which had been acquired but was not being used, although long-range plans had been prepared which envisioned the future use for exempt charitable purposes of the new acquisitions. The court, speaking through Mr. Justice McALLISTER, held that:

> "* * * By requiring that exempt property be actually occupied for charitable or other exempt purposes the legislature must have meant something more than mere ownership or even ownership with an intent to put the land to an exempt use in the future. Actual occupancy must mean as a minimum that the land be occupied by a building under construction." (263 Or at 291-292.)

■ The defendant department concluded that the county's denial of the exemption must be sustained under these authorities. In so doing, it has overlooked the fact that these two cases (the first of which appears to support the present case and the second of which is factually distinguishable) construe a different statute from that here applicable. ORS 307.130, applying to incorporated literary, benevolent, charitable and scientific institutions, contains the language, *"actually and exclusively occupied or used* in the literary, benevolent, charitable or scientific work carried on by such institutions." (Emphasis supplied.) The pertinent statute, ORS 307.140, provides that the property owned or being purchased by religious organizations shall be exempt from taxation as to:

"(1) [a]ll houses of public worship and other additional buildings and property *used solely* for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. * * *" (Emphasis supplied.)

This court finds that the marked difference in emphasis between "actually and exclusively occupied or used" and "used solely" justifies further examination of the present question. (The same conclusion is urged by the amicus curiae in her brief, prepared at the direction of the City Attorney of the City of Portland.) The entitlement to exemption of the plaintiff in the normal course has never been disputed. All the activities of plaintiff in connection with the subject property came within the provisions of the exemption statute; that is, whatever the use of the property, it was *solely* used. Thus, the only question remaining is, was the property being "used" so as to justify exemption under the legislative intent of the statute, latent or patent?

In its Order No. VL 75-329, defendant presented the issue as follows:

"The issue is whether property, exempt from taxation by reason of ownership and use by a religious organization, transferred to another religious organization to be used for exempt religious purposes, loses its exemption when physical occupancy is delayed by the failure of a city planning commission to promptly approve a conditional use permit."

The question appears to be a novel one. No authority has been cited by counsel which bears directly on the point and the court has found none. Once more, the fact that a multiplicity of governmental agencies, designed to solve problems and to foster and protect the public weal, creates problems of time and expense, is clearly illustrated. The court finds no fault in any of the governmental agencies here involved. However, under the facts of this case, the answer to the question posed in defendant's statement of the issue must be "no."

 With the development of new and untested state and local laws relating to land use planning, under which several governmental agencies may have licensing duties imposed upon them in any specific instance, each agency must be shown due deference by the other governmental bodies and must be allowed a reasonable time in which to act (through petitions, discovery of facts and issuance of orders). If, pending the process, one agency must necessarily wait upon a second and the first agency's decision must be held in abeyance, the rights of a taxpayer, including those of a potentially exempt person, should not be foreclosed solely for this reason.

The legislature could never have intended the language of ORS 307.140 to deprive the plaintiff of an

exemption under the facts of this case, where its general entitlement to the exemption is uncontested and its application for exemption was timely made.* It sought from the time of acquisition to use the subject property as fully as it legally could and, as a matter of fact, did make some use of it, and, eventually, the hindrances to its use, consisting solely of temporary governmental restrictions pending governmental decisions, were ultimately eliminated by favorable governmental approval of its petitions.

The court also finds, under the facts of this case, that the minimum requirements of "use" approved by the Supreme Court in *Soc. St. Vin. DePaul v. Dept. of Rev.*, 272 Or 360, 537 P2d 69 (1975), in an ORS 307.130 case, are satisfied here. Upon comparing the language of the two statutes, ORS 307.130 and 307.140, no logic can be found compelling a greater burden on the religious organization; in fact, it appears to the court that a lesser burden is intended.

Defendant's Order No. VL 75-329 is set aside and held for naught. Defendant shall issue a new order to the Director of the Division of Assessment and Taxation of Multnomah County, requiring him to take the necessary steps to amend the assessment and tax rolls of the county for the tax year 1974-1975 to show the subject property as exempt pursuant to ORS 307.140 for that year.

This decision renders unnecessary a remand to

---

* "Acquired" and "acquisition," as used in ORS 307.162(3) and applicable to this case, must be used in the sense "to come into physical possession of," the subject property, setting the time the 30-day application period begins to run, since the criterion for approval of the exemption depends on the petitioner's *use* of the premises. ORS 307.140(1). Determination of the facts of use must be made as of the date of the application in those instances in which the assessment date of January 1 is not appropriate.

defendant to determine the true cash value of the subject property for 1974-1975.

Each party shall pay its own costs.