# IN THE OREGON TAX COURT

## WOMAN'S CONVALESCENT HOME ASSOCIATION FOUNDATION
*v.*
## DEPARTMENT OF REVENUE
(TC 1438)

Jarvis B. Black, Buell, Black & Dupuy, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered July 12, 1982.

**CARLISLE B. ROBERTS, Judge.**

Plaintiff appealed from defendant's Order No. VL 80-374, dated September 15, 1980, denying an exemption from ad valorem taxation of certain real property and improvements thereon for the 1979-1980 tax year.

The facts as adduced from testimony at trial are as follows: Woman's Convalescent Home Association Foundation is a charitable corporation entitled to claim property tax exemption under ORS 307.130. For a number of years prior to 1980 it was the owner of real property and improvements located at 2727 S.E. Alder Street, Portland, Oregon. In January 1977, the property was leased to Alcoholism Counseling and Recovery Program, Inc., also a charitable entity (Pl Ex 1). For two years, 1977-1978 and 1978-1979, the property was exempt from ad valorem taxation under ORS 307.130 and 307.166.

Although its lease did not expire until "June 31, 1979" [sic], Alcoholism Counseling and Recovery Program, Inc., due to lack of funds, vacated the premises in February of 1979.[1] Plaintiff listed the subject property for sale on the open market in March 1979. Now and then one of plaintiff's members would stop by to check on the security of the building. On January 4 and 25, and September 27, 1979,

---

[1] Mrs. Nancy B. Roth, a governor of the plaintiff's board, beginning in 1974, and president in 1979, testified that the board offered the premises rent free to the lessee for the period of February 1 to May 31, 1979, but the lessee left the premises on February 2.

plaintiff's board held meetings upon the premises. Other than these few occasions, the building remained unoccupied until at least November 13, 1979, when plaintiff entered into a contract to sell it to the United Cerebral Palsy Association of Northwest Oregon, of Portland, an organization with the right to claim property tax exemption under ORS 307.130.

In June 1979, the Multnomah County tax exemption field supervisor, Mr. John B. Long, noticed a lack of activity "at 28th and Alder." A "For Sale" sign had been there for some time. He obtained a listing statement from the plaintiff's real estate agent and noted that it contained no restriction as to buyer. Subsequently he made further visual checks and, in August 1979, he notified plaintiff that since the subject property was not being occupied and used by plaintiff as required by ORS 307.130, it was to be considered 100 percent taxable for the 1979-1980 tax year (Pl Ex 2). Plaintiff's representative appeared before the Multnomah County Division of Assessment and Taxation in September 1979 to show cause why the assessment should not be made. In November 1979, plaintiff was notified by Mr. Long that the original decision had been affirmed and that no exemption would be allowed for 1979-1980 (Pl Ex 3). The determination was appealed to and affirmed by the Department of Revenue.

ORS 307.130 is the source of the charitable exemption for ad valorem property taxation:

"Upon compliance with ORS 307.162 [relating to filing an application], the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1)  * * *  [O]nly such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

■       Plaintiff's function with respect to the subject property was similar to that of a landlord. The property was always leased to other charitable organizations, and used only occasionally by plaintiff for its board meetings. ORS 307.166 preserves the exempt status of property leased in such a manner.

"(1)  If property is owned or being purchased by an institution * * * granted exemption or the right to claim

exemption for any of its property under a provision of law contained in this chapter, and such institution * * * leases or otherwise grants the use and possession of such property to another institution * * * likewise granted exemption or the right to claim exemption for any of its property under a provision of law contained in this chapter, such property is exempt from taxation if used by the lessee or possessor in the manner, if any, required by law for the exemption of property owned or being purchased by it * * *.

"(2)   The lessee * * * shall file a claim for exemption * * *.[2]

"(3)   * * * The exemption shall continue so long as the ownership and use of the property remain unchanged and during the period of the lease or agreement. If either the ownership or use changes, a new application shall be filed. *If the lease or agreement expires before July 1 of any year, the exemption shall terminate as of January 1 of the same calendar year.*" (Emphasis supplied.)

This section was enacted in 1977, in direct response to an Oregon Supreme Court decision which held that ORS 307.130 could not be read to include property leased by one exempt corporation to another exempt person, including a municipality. *Albany Gen. Hospital v. Dept. of Rev.,* 277 Or 727, 561 P2d 1029 (1977). The section does not create a separate exemption for leased property. It merely preserves the exemption already established by ORS 307.130. However, one intending to qualify under its provisions must satisfy the separate application and filing requirements contained therein. The section requires, among other things, that "[i]f either the ownership or use [of the property] changes, a new application shall be filed."

■      There was a change of use when the property was leased by the Alcoholism Counseling and Recovery Program, Inc., but this apparently went unnoticed by all the interested parties at the time. When Alcoholism Counseling and Recovery Program, Inc., left the premises in February 1979, this again constituted a change of "use" within the meaning of ORS 307.166(3).

The last sentence of ORS 307.166(3), as noted above,

---

[2] Mr. Long testified that the lessee apparently never filed a claim with the Multnomah County Division of Assessment and Taxation. Counsel never raised this potential issue.

provides that if a "charitable lease" or agreement expires before July 1 of any year, the exemption shall terminate as of January 1 of the same calendar year. Thus, even if the lessee had occupied the property for the full term of the lease (through June 30, 1979), the exemption would have legally been deemed to terminate on January 1, 1979.

Plaintiff has expended much effort in order to show that plaintiff's use and occupancy of the subject property qualified it for exemption by way of ORS 307.130, independent of ORS 307.166. In deference to counsel, the court's view on this issue is set out in a footnote.[3] Even if plaintiff's use of the property after the expiration of the lease was sufficient to qualify it for exemption under ORS 307.130, plaintiff was still required to file a new application pursuant to ORS 307.166. Additionally, ORS 307.130 exempts property only "[u]pon compliance with ORS 307.162 * * *," which also requires reapplication upon a change of use.

After the plaintiff ceased to use the building for its

---

[3] The thrust of plaintiff's argument is an intriguing twist of the "actually and exclusively occupied and used" requirement of ORS 307.130(1). Plaintiff concedes that the subject property was vacant from February to November 1979, except for one board meeting in September 1979. Indeed, this vacancy is the key to plaintiff's theory: it argues that the fact that the property was not used or occupied during the period for any nonexempt activity requires a finding that it was used and occupied for a tax-exempt activity under ORS 307.130. The question becomes whether and to what extent nonoccupancy and nonuse qualify an organization for an exemption under a statute which requires actual and exclusive use or occupancy.

The issue has been dealt with indirectly in several Oregon cases. In *Willamette Univ. v. Tax Com.*, 245 Or 342, 422 P2d 260 (1966), the Supreme Court held that a building under construction qualified for tax exemption because, although the property was not actually used and occupied for tax-exempt purposes, it was being prepared for such use and occupancy. The court in that case also referred to a parking lot, used by the construction workers, but subsequently refused to extend its ruling to vacant land. *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972). Since *Willamette Univ.*, the court has been consistent in its posture that a vacant building which is *being prepared* for a known future exempt use is entitled to exemption. *Soc. St. Vin. DePaul v. Dept. of Rev.*, 272 Or 360, 537 P2d 69 (1975).

The subject property was not only vacant on the assessment date. It was for sale on the open market, without restriction. While plaintiff's witness, Mrs. Nancy B. Roth, testified that plaintiff's board of directors hoped the property would be sold to the United Cerebral Palsy Association, there was no evidence presented which indicated that the property might not, under some circumstances, have been sold to a nonexempt organization. It was not known on the assessment date that the future use of the property would be an exempt one. Neither was there evidence presented to show that the property was being prepared for a known future exempt use. No reading of the cases construing the exemption section allows the court to find that a vacated building which is *on the market for sale to the general public* qualifies for exemption.

former charitable purposes and turned to other charitable activities, the plaintiff's use of the building in 1979 for any purpose was so minimal that it must be disregarded as outside the intent of the exemption statute.

Plaintiff urges that the court be mindful of the legislative policy favoring charitable exemptions, and overlook technical failures to meet the statutory requirements.

■ The Legislative Assembly has given much thought and study to the exemption of property from ad valorem property taxation and has acted generously (considering that losses of potential revenue necessarily increase the contributions of other taxpayers). Its profound interest is manifest.[4] Necessarily, to avoid abuse, it has hedged its gifts with conditions. It is the court's duty to require both administrator and taxpayer to take heed of the stated requirements.

This suit is one of the type of "hard cases which [can] make bad law." No one wishes to weaken a charitable corporation, led by conscientious and generous citizens, by diverting its limited income to mundane property taxes. But John B. Long, Field Supervisor, Tax Exemption Section of Multnomah County's Division of Assessment and Taxation, was only doing his duty in calling attention to the nonuse of the subject property. See ORS 307.035. It is tempting for the judge, recognizing that organized charitable work is one sign of humanity's progress from barbarism, to find a bridge for the gap between the use and the nonuse of the building and its eventual sale. But the system cannot work this way; it is for the legislature, not the courts, to enlarge property tax exemptions (when the statute is clear within the context of the specific facts, as in this case). Oregon's original rule was stated in *Benevolent Society v. Kelly,* 28 Or 173, 195, 42 P 3, 6 (1895), as follows:

> "It is so manifestly just that all property shall bear its due proportion of the expenses of government that laws granting exemption from taxation are always strictly construed, and before such exemption can be admitted, the intent of the legislature to confer it must be clear beyond a reasonable

---

[4] See the Index to the Oregon Department of Revenue's publication, *Property Assessment and Taxation Laws and Administrative Rules,* either the 1979 or 1981 editions, under "Exemptions." It contans dozens of references.

doubt. Thus, it is held that laws exempting from taxation 'houses of religious worship,' or 'buildings erected and used for religious worship,' or 'property used for religious purposes,' etc., do not exempt a parsonage erected by a religious society for the use of its minister, although occupied by him free of rent and built on grounds which would otherwise be exempt: [citations omitted] * * *."[5]

A study of the statutes makes it certain that the legislature has not specifically provided for exemption within the factual situation which has been presented in this suit; that is, the case of a reputable charitable organization, the owner of expensive improved realty, subject to a slow turnover in a normal market, during a period when the property has not been actually and exclusively occupied or used in the charitable work of the corporation (although there has been a token use through one board meeting having been held on the premises in the tax year).

The order of the Department of Revenue No. VL 80-374 is affirmed. Each party shall bear its own costs.

---

[5] The decision in this particular case was restricted in later days by the Oregon Supreme Court in *Ore. Physicians' Serv. v. State Tax Com.*, 220 Or 487, 349 P2d 831 (1960).