DECISION
Plaintiff appeals Defendant's denial of its property tax exemption application for property identified as Accounts 0474898 and 0474948 (subject property). A telephone trial was held by Magistrate Jeffrey S. Mattson on November 30, 2010. Edward T. Monks (Monks), Executive Director of Catholic Community Services and Attorney at Law, appeared and testified on behalf of Plaintiff. Lori Halladey (Halladey), Senior Office Assistant, Lane County Department of Assessment and Taxation, appeared and testified.
Plaintiff's Exhibit 1was admitted without objection. Parties submitted written closing statements January 14, 2011 (Plaintiff), and January 18, 2011 (Defendant).
 I. STATEMENT OF FACTS
The parties agree that there are no factual disputes. Monks testified that Plaintiff purchased the subject property because Plaintiff "outgrew" its facility. He testified that the organization "discovered" the subject property in the spring of 2009 and began working with an architect because the building needed "substantial renovation" to meet "code." Monks testified that meetings with architects began in March 2009 through July 2009. (Ptf's Ex 1 at 1, 10 — 13.) He testified that Plaintiff received a "[p]roposed architectural plan for the building dated 06/30/09" and a "[s]tatement of costs associated with renovations, also dated 06/30/09." *Page 2 
(Ex 1 at 14, 15.) Monks testified that Plaintiff purchased "locks" prior to signing "closing papers on 06/19/09" and building and plumbing permits were "issued 07/14/09 related to the demolition of interior walls (non-conforming — needed to be demolished.)" (Ptf's Ex 1 at 16, 17, 28 — 30.)
Monks testified that he make approximately "65 visits to the subject property" between June 19, 2009 and October 15, 2009. He testified that Bonnie Duke, who handled technology requirements, met with various contractors in June 2009 and July 2009, to discuss telephone and security.
Plaintiff filed an Application for Real and Personal Property Tax Exemption for the subject property on July 10, 2009. (Ptf's Ex 1 at 3.) In its application, Plaintiff wrote that it acquired the property on June 19, 2009, and was seeking exemption under ORS 307.130. (Id.) The property use section was completed as follows:
 "The property is used for the following purpose: Distribtuion site for food, clothing, etc.; offices."
(Id.)
On August 30, 2009, Defendant wrote to Plaintiff, stating that it was denying Plaintiff's application to be exempt "for the 2009-10 assessment and tax year because there was not a qualified use of the property as of July 1, 2009." (Ptf's Ex 1 at 5.)
In response to Defendant's questions, Monks testified that Plaintiff's "first client" was served "in late November 2009" and the "grand opening" of the facility was "the first week of December 2009." He estimated the total remodeling costs to be approximately "$100,000."
Halladey testified that Defendant concluded that the subject property did not qualify for exemption because there was "no qualified use" on or before June 30, 2009. In support of Defendant's conclusion, Halladey cited ORS 307.130 and OAR 150-307.130(2)(b). She also submitted an Oregon Tax Court, Magistrate Division Decision, Summit View Evangelical Covenant Church v.Washington County Assessor, *Page 3 
TC-MD No 041045A (Oct 4, 2005) and an Oregon Tax Court, Regular Division Opinion, Multnomah County v, Dept of Rev.,13 OTR 339 (1995).
 Monks' reiterated in his closing statement that Plaintiff
 "was able to take a used car lot and shop, obtain necessary permits, perform required demolition, complete renovation and begin operations with the public in less the 5 months."
(Pft's Ltr at 2, Jan 13, 2011.) His closing statement included references to Willamette University v. State Tax Commission,245 OR 342 (1966) and to St. Vincent de Paul v. Dept. ofRev., 272 OR 360 (1975):
 "The evidence was uncontradicted that, at all times after closing on 06/16/09, Catholic Community Services moved quickly in applying for and obtaining the necessary permits from the City of Eugene, completing demolition, completing ADA-accessible bathrooms as required by Code, completing significant renovations and additions and opening to the public."
 The facts of our case fall easily within those in the Willamette University and St. Vincent de Paul cases."
(Id. at 3 (emphasis in original).)
 II. ANALYSIS
"Generally, all property located within Oregon is taxable."Living Enrichment Center v. Dept. of Rev.,19 OTR 324, 328 (2007) (citing ORS 307.030). "It has long been the rule in Oregon that property is subject to taxation unless specifically exempted." Id. at 328 (quoting Christian LifeFellowship, Inc. v. Dept. of Rev.,12 OTR 94, 96 (1991) (citation omitted)). Exemption provisions "should be strictly construed in favor of the state and against the taxpayer." North Harbour Corp. v. Dept. of Rev.,16 OTR 91, 94 (2002) (citing Mult. School of theBible v. Mult. Co.(Mult. School of the Bible),218 Or 19, 27, 343 P2d 893 (1959)). That rule of construction means "strict but reasonable[,] * * * [which] requires an exemption statute be *Page 4 
construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent."Id. at 95 (citing Mult. School of the Bible,218 Or at 27-28).
Plaintiff asserts that the subject property qualifies for exemption from property taxation as of July 1, 2009, because it meets the statutory requirements of ORS 307.130(2)[1] which provides, in pertinent part, that:
 "Upon compliance with ORS 307.162, the following property owned or being purchased by * * * charitable * * * institutions shall be exempt from taxation:
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable* * * work carried on by such institutions."
The parties agree that Plaintiff is a charitable institution. The issue before the court is whether the use made of the subject property qualifies for exemption under the statute. Property or a portion of a property shall be exempt from taxation if it is "actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions." ORS 307.130(2)(a). "[T]he words `exclusively occupied or used,' * * * refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution." Mult. School of Bible,218 OR 36-37. "It is the actual occupancy of the property which determines its right to exemption[.]" Id. at 40 (citing HibernianBenevolent Society v. Kelly,28 Or 173, 193, 42 P 3 (1895)).
The statute requires property to be "actually and exclusively" occupied or used. ORS 307.130(2). One leading case discussing the requirement of "actually occupied and used" *Page 5 
is Willamette University. v. Tax Commission. (Willamette University), 245 Or 342, 422 P2d 260 (1966). In that case, the Oregon Supreme Court held "that buildings under construction are being occupied and used for purposes of the statute." Multnomah County, 13 OTR at 341. The court stated inMultnomah County that the Oregon Supreme Court "construed the statutory requirement of actually occupied and used as pertaining to `whether or not the premises are then being prepared to carry out the purposes of the exempt charity * * * .'"Id. (citation omitted)." In Society of St. Vincent DePaul ofPortland, Oregon, Inc. v. Department of Revenue, the Oregon Supreme Court concluded in that case with facts similar to those before the court that Willamette University was "controlling."St. Vincent DePaul of Portland, Oregon, Inc. v. Dept. of Rev.(St. Vincent DePaul), 272 Or 360, 365, 557 P2d 64, (1975) The Court stated:
 "In this case the plaintiff had a completed building and initiated its occupancy thereof prior to July 1, 1972, and continued thereafter to expand and develop its use of the building as rapidly as possible, with the result that within a few months after July 1, 1972 it had in operation a sheltered workshop and related programs."
In the case before the court, Plaintiff purchased a completed building and, prior to July 1, "initiated its occupancy" by changing the locks, engaging architects to design the renovated building and holding numerous meetings with architects and other contractors at the subject property. In less time than it took the plaintiffs in St Vincent DePaul to complete its renovation, Plaintiff completed the subject property's renovations and was serving its clients by late November.
This court has allowed a property tax exemption when a charitable organization that owns or leases property shows that it is using the property during a transition period even if that use is for storage during the time the property is in transition. See InternationalSchool v. Dept. of Rev., 13 OTR 220, WL 66377 *2 (Feb 14, 1995) (granting exemption where area needed *Page 6 
improvement in the future but was minimally used as a playground in its current condition); Reorganized Church of LDS v. Dept. ofRevenue, 6 OTR 510, WL 1468*5 (Sep 15, 1976) (granting exemption where religious organization was in possession of newly acquired property, and was occupying space with furniture/equipment but could not begin renovations until after July 1 due to pending approval by the city).
In contrast, this court has denied a property tax exemption when the organization permits a property to sit idle, shows no active use of the property and has no immediate plans to use the property.See Westside Community Church v. Benton County Assessor, TC-MD No 070727E, WL 4440218 *3 (Dec 19, 2007) (denying exemption where part of property was not occupied or used and there were no immediate plans to do so); Multnomah County,13 OTR at 341, WL 431011 *2 (denying exemption because entire building was not in use while financing was arranged); Woman'sConvalescent Home Ass'n Foundation v. Department of Revenue,9 OTR 190, 194 WL 2135 *3, (Jul 12, 1982) (denying exemption where property was for sale on the open market and the only use was one board meeting).
In the case before the court, the subject property was not under construction; it was being "prepared to carry out the purposes of the exempt charity." Multnomah County,13 OTR at 341 (citation omitted). It was in the process of being updated to meet various code requirements and renovated to serve Plaintiff's clients. In the months prior to the change in ownership, Plaintiff met with architects and changed the locks prior to the transfer of ownership on June 19, 2009. Plaintiff received the proposed architectural plan on June 30, 2009, and 14 days later various permits were obtained. Plaintiff's representatives held numerous meeting with architects and contractors at the subject property. Each and every activity undertaken beginning in March 2009 *Page 7 
was purposely directed to enabling Plaintiff to use the subject property for its charitable purposes.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiff met the statutory use requirement because all of its activities were undertaken to prepare the subject property "to carry out" its charitable purposes. MultnomahCounty, 13 OTR at 341. Now, therefore,
IT IS THE DECISION OF THIS COURT that the subject property identified as Accounts 0474898 and 0474948 qualifies for property tax exemption.
Dated this ____ day of April 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on April 11, 2011. The Court filed and entered this documenton April 11, 2011.
[1] References to the Oregon Revised Statutes (ORS) to are year 2007. *Page 1