IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

NEWSPACE CENTER FOR          )
PHOTOGRAPHY,                 )
                             )
          Plaintiff,         )     TC-MD 130545C
                             )
     v.                      )
                             )
MULTNOMAH COUNTY ASSESSOR,    )
                             )
          Defendant.         )     **FINAL DECISION**

The court entered its Decision in the above-entitled matter on June 26, 2014. The court

did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days

after its Decision was entered. The court's Final Decision incorporates its Decision without

change.

Plaintiff appeals Defendant's denial of its application for property tax exemption dated

September 12, 2013, for the 2013-14 tax year. A trial was held in the Oregon Tax Courtroom on

May 5, 2014, in Salem, Oregon. David Wilson, Attorney at Law, appeared on behalf of Plaintiff.

Tricia Hoffman (Hoffman), Executive Director of Plaintiff, testified on behalf of Plaintiff.

Lindsay Kandra (Kandra), Assistant County Attorney, Multnomah County, appeared on behalf of

Defendant. Defendant did not present any witnesses.[1] Plaintiff's Exhibits 1 to 24 were received

without objection. Defendant's Exhibits A to C were received without objection.

/ / /

/ / /

_____

[1] Prior to trial, the parties stipulated to the admission of all exhibits without objection. After Plaintiff rested, Defendant advised the court that it would not be presenting any testimony because the individual Defendant brought to trial was only needed to authenticate Defendant's exhibits and with the parties' stipulation, her testimony was deemed by Kandra to be unnecessary.

# I. STATEMENT OF FACTS

A.     *Parties' agreements.*

The parties agreed to certain facts on the morning of trial.[2]  They agreed that Plaintiff is an IRC 501(c)(3) corporation, and that its Articles of Incorporation and Bylaws are "agreed on," presumably meaning that there was no dispute as to the authenticity or accuracy of the information contained therein.

Plaintiff's bylaws state that Plaintiff "is organized exclusively for charitable, and educational purpose." (Ptf's Ex 2 at 1.)  Its bylaws further explain that the "corporations [sic] primary purpose shall be to offer fine art photography education, support the arts community, and enhance public awareness of fine art photography through gallery exhibits, receptions, lectures, projects with other arts organizations, artists-in-residence, events for patrons, facilities used by students and renters, and programs for youth and the community." (*Id.*)

The parties further agreed that the subject property is 5,157 square feet, with 4,157 square feet on the ground floor, comprised of a studio, a library, a digital lab, a digital classroom, a gallery, and offices; and a 1,500 square foot second floor that contains a classroom, a lounge, and a darkroom.

The parties agreed that Plaintiff filed a timely application for exemption, and that Defendant denied Plaintiff's exemption application.  Finally, the parties agreed that the leases for Plaintiff's real and personal property "are properly qualified."  Defendant denied Plaintiff's exemption application(s) in September 2013. (Ptf's Compl at 4, 5.)

---

[2] The stipulated facts were agreed upon by the parties at the suggestion of the court.  The parties met privately in a conference room across from the courtroom to discuss the matter and they returned to the courtroom and reported having reached agreement to certain facts.  The court requested that the parties' agreed-upon facts be presented in writing, and Defendant's representative Kandra submitted a handwritten document reviewed by Plaintiff's representative Wilson.  The factual agreements are not numbered and the court therefore has no official citations (*e.g.*, Stip Fact 1; ¶1) for the individual facts upon which the parties agree.

B.    *Other relevant facts*

1.    *Property description.*

Plaintiff leases the subject property, which is located at 1632 SE 10th Avenue in Portland. The first floor is the larger of the two floors and is comprised of an art gallery that one enters when coming through the front door of the subject property. To the left of the gallery is a counter, or information desk, staffed at all times during the gallery's operation, usually by volunteers. Additional rooms on the first floor are a classroom, two darkrooms, a photography studio, staff offices and a library. The smaller second floor has a classroom, a traditional "film" developing darkroom, and a lounge.

2.    *Activities occurring at the subject property*

Hoffman testified that the gallery is open from 10:00 a.m. to 10:00 p.m. Monday to Thursday, and 10:00 a.m. to 6:00 p.m. Friday and Saturday.

There are essentially four activities that occur on the subject property. The two primary activities are the contemporary photography exhibits in the large gallery on the first floor and photography classes held in the classrooms on the first and second floors. The other two activities Plaintiff provides are lectures and guided tours.

The photography exhibits rotate monthly and feature photographs by local and national artists, both established photographers and emerging artists. The court accepts Plaintiff's trial testimony that the photography exhibits displayed in the art gallery afford the photographers the opportunity to develop their exhibition skills and enhance their reputation, and that the citizens in the Portland community benefit from the opportunity to view and appreciate the artist's work. Finally, the exhibitions in the art gallery are available for public viewing during all business hours, free of charge.

The second significant activity Plaintiff provides is photography classes. The classes are held in the classrooms, with students typically using the computers at each desk in the classroom. Some of the more advanced classes enable students to use the digital darkroom, the film darkroom, or the studios, including the equipment in those rooms. Plaintiff offers classes for both beginners and more experienced (advanced) students. Instructors typically teach one to three classes per year on subjects such as lighting, use of computer based photographic software (*e.g.*, Adobe Photograph), portfolio building, and portraiture. A typical class has between one and four sessions that last three hours. Plaintiff charges a fee for the classes, although there are limited scholarships given and individuals who volunteer for Plaintiff may attend classes for free.

A third activity Plaintiff provides is lectures that are held in the first floor art gallery. Plaintiff offers 10 to 15 lectures per year. The lectures are given by exhibiting photographers. Plaintiff does not charge for attendance at its lectures.

The fourth activity Plaintiff offers is guided tours several times per year to local school children and community groups. Plaintiff offers those tours free of charge.

In addition to the four activities described above, Plaintiff's members and members of the general public use the film room, darkroom, and the studio. Those uses are all fee-based.

3.    *Financial information*

     a.    Revenues

Plaintiff's total revenues were $499,453 in 2012 and $410,241 in 2013. (Def's Exs B at 1, C at 1.) In 2012, $40,132 of Plaintiff's $499,453 total income came from membership fees, $5,000 from government grants, and $54,531 from other contribution, gifts, and grants, for a total of $99,663. (Def's Ex C at 1, 8.) The majority of the remaining revenues in 2012, amounting to $394,196, came from program service fees, primarily classes and workshops

($318,589), but also darkroom and studio rental fees, and "juried" exhibitions and registration fees. (*Id*.) Plaintiff did generate $5,594 in investment income and "other revenue" in 2012. (*Id*.) In 2013, Plaintiff's $410,241 in gross revenues was comprised of $65,967 in contributions and grants and $339,154 in program service revenue, plus $5,120 in investment income and "other revenue." (Def's Ex B at 1, 9.) As in 2012, the majority of Plaintiff's 2013 program service revenue ($270,927 of the total $339,154) came from class and workshop fees. (*Id*.)

        b.     Gifts and giving

Plaintiff reported total gift and giving in 2013 of $62,627.75.[3] (Ptf's Ex 16 at 1.) Plaintiff calculated that number as follows: $9,300.00 in community scholarships, $20,075.00 in volunteer scholarships, $3,880.20 in volunteer facilities use, and $29,372.55 in the form of open public access to the photo gallery ($27,278.60) and open lectures ($2,093.95). (*Id*.)

        4.     *Membership*

Plaintiff sells tiered memberships to interested individuals. (Ptf's Ex 20; Hoffman's Trial Test.) Hoffman testified on cross-examination that Plaintiff had approximately 400 members, and that members pay to attend classes and gallery exhibits, although they are entitled to use the facilities and take classes at reduced rates. Memberships sell for between $40 ("Pixel Level") and $1,000 ("Mammoth Plate Level"). As indicated above, Plaintiff generated $40,132 in membership dues in 2012 and $33,319 in 2013 (approximately 8 percent of total revenues each year). (Ptf's Ex C at 8; B at 9.)

/ / /

/ / /

---

[3] Plaintiff's counsel reported a slightly larger number for 2013 in his Trial Brief (Brief); a total of $65,311. The variance stems from a larger amount identified by Plaintiff in its Brief for "volunteer facilities use" ($5,936 versus $3,880.20 in Plaintiff's trial Exhibit 16).

5.    *Volunteers*

Hoffman testified that Plaintiff has approximately 30 volunteers at any given time and that volunteers typically commit to four hours of service per week. That totals approximately 6,200 hours of volunteer service per year. Volunteers assist in the operation of the gallery and other aspects of Plaintiff's operation and, in return, are entitled to, and do, attend classes and use the facility free of charge. Other individuals pay for those events.

## II.  ANALYSIS

The issue before the court is whether the subject property is entitled to property tax exemption for the 2013-14 tax year.

Generally, all property located within Oregon is taxable. See ORS 307.030 (footnote omitted). "[I]t has long been the rule in Oregon that property is subject to taxation unless specifically exempted." *Christian Life Fellowship, Inc. v. Dept. of Rev.*, 12 OTR 94, 96 (1991) (citing *Methodist Homes, Inc. v. Tax Com.(Methodist Homes)*, 226 Or 298, 307, 360 P2d 293 (1961)).

Plaintiff leases the subject property. As a lessee, Plaintiff is entitled to exemption from property taxes under ORS 307.112, provided it qualifies under one of the statutes allowing for exemption enumerated in ORS 307.112 (providing exemption for "[r]eal or personal property of a taxable owner held under lease * * * by an institution, organization or public body * * * granted exemption or the right to claim exemption for any of its property under * * * ORS * * * 307.130).[4]

Plaintiff seeks exemption under ORS 307.130 as a "charitable" institution or organization.

---

[4] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2011.

ORS 307.130(2) provides, in part:

>        "[T]he following property owned or being purchased by * * * incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

>        "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."[5]

Plaintiff argued that it is a qualified nonprofit charitable institution and that its real and personal property qualify for exemption under ORS 307.130 because it is actually and exclusively occupied and used as part of the organization's charitable work. Plaintiff further argued that it meets the three-part test for a charitable institution set out in *SW Oregon Pub. Def. Services v. Dept. of Rev.* (*SW Oregon Pub Def Serv's*), 312 Or 82, 89, 817 P2d 1292 (1991).

Defendant argued that Plaintiff is not a qualifying charitable institution because it does not perform in a manner that furthers its charitable object, and lacks the requisite gift or giving. (Def's Pretrial Memo at 4-6.) Defendant also argued that the subject property is not exclusively used for charitable purposes. (*Id*. at 6-7.)

Oregon courts recognize that exemption provisions "should be strictly construed in favor of the state and against the taxpayer." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 94 (2002) (*North Harbour*) (citing *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 27, 343 P2d 893 (1959)). "That rule of construction is paraphrased in later cases as 'strict but reasonable.' " *Id*. (citing *Eman. Luth. Char. Bd. v. Dept. of Rev. (Eman. Luth. Char. Bd.)*, 263 Or 287, 291, 502 P2d 251 (1972)). Strict but reasonable construction "requires an exemption statute be construed

/ / /

---

[5] "[T]he word 'benevolent' used in connection with the word 'charitable,' as used in the statute, is synonymous therewith." *Methodist Homes*, 226 Or at 309.

reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *Id*. (citing *Mult. School of Bible*, 218 Or at 27-28).

"Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *Id.* In *North Harbour* this court quoted with approval the rule set forth in *Eman. Luth. Char. Bd.,* that "* * * [s]trict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." *Eman. Luth. Char. Bd.* at 291.

"Oregon courts look to answer two main questions in determining whether property falls within the 'charitable institutions' exemption of ORS 307.130. First, whether the entity seeking the exemption is a 'charitable institution,' and second, whether the property is 'actually and exclusively occupied or used in the * * * charitable * * * work carried on' by the organization." *Corvallis Neighborhood Housing Services, Inc. v. Linn County Assessor* (*Corvallis Neighborhood Housing*), TC No 4996, WL 780999 at *3 (2013).

A. *Charitable institution*

To determine whether Plaintiff is a "charitable institution" within the meaning of ORS 307.130(2), and whether its leased property qualifies for exemption, the court must consider the three-part test set forth in *SW Oregon Pub Def Serv's*, 312 Or at 89. Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

/ / /

To be a "charitable institution" for purposes of ORS 307.130: "(1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *SW Oregon Pub Def Serv's*, 312 Or at 89. All three conditions must be met to qualify as a charitable institution within the meaning of ORS 307.130. *Mazamas v. Dept. of Rev.*, 12 OTR 414, 415 (1993). The test is applied to the overall activities of Plaintiff, not a portion thereof. *Mercy Medical Center, Inc. v. Dept. of Rev.* (*Mercy Medical*), 12 OTR 305, 307 (1992).

      1.      *Is Plaintiff a "charitable institution?"*

          a.      Does Plaintiff have charity as its primary, if not sole, object?

The first of the three questions courts analyze to determine whether a given organization is a "charitable institution," is whether "the organization [has] charity as its primary, if not sole, object." This court in *Corvallis Neighborhood Housing* provided a helpful analysis for considering that question. There the court stated:

> "[t]he court does not understand the requirement that an entity seeking exemption under ORS 307.130 have charity as its 'primary, if not sole, object' to mean that the entity must exist to pursue only some abstract notion of 'charity.' * * * For example, in [*SW Oregon Pub Def Serv's*] the Supreme Court ruled that an organization providing legal representation to indigent criminal defendants was charitable, even though the obvious purpose of that organization was to provide legal services to indigent clients, not just abstract 'charity.' 312 Or at 94. Likewise, in several instances this court has ruled that hospitals and adult foster care facilities can be charitable institutions for purposes of ORS 307.130, even though those organizations exist to provide specific services and not simply some broadly construed notion of 'charity.' (Citations omitted) * * * What 'charity as primary, if not sole, object' stands for is that, as the first step in its analysis, the court must determine whether an organization seeking exemption exists to enrich the private individuals who own or operate it, or whether it exists to benefit society at large without an eye to private gain. *See Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 427, 723 P2d 320 (1986)."

*Corvallis Neighborhood Housing*, WL 780999 at *3.

The last sentence of the excerpt from *Corvallis Neighborhood Housing* quoted above distinguishes between private enrichment versus a general societal benefit "without an eye to private gain." (*Id*.) That statement is accurate as far as it goes, but is a bit general and still leaves open the question of what type of societal benefit satisfies the statute.

The court in *Corvallis Neighborhood Housing* did note, as the parties here acknowledge, that courts regard an institution's articles of incorporation and bylaws as *prima facie* evidence of the purpose of the organization. (*Id*.) However, although the courts do accept those documents as *prima facie* evidence of *purpose*, the organization's stated purpose, as set forth in its articles or bylaws does not necessarily establish that the organization has charity as its primary, if not sole, object. That is so because the linchpin for charitable exemption under ORS 307.130 is "charity," and an organization could easily thwart the legislative intent by simply declaring in its articles of incorporation or bylaws that its purpose was "charity." After all, the other two requirements in the judicially established three-part test set forth in *SW Oregon Pub Def Serv's* are tied to the nature of the organization as charitable (the second requirement being that the organization perform in a manner that furthers its charitable object and the third requiring the organization's performance involve gift or giving). 312 Or at 89. The court must therefore review Plaintiff's stated purpose to discern whether it is truly primarily charitable.

The applicable administrative rule provides that an institution may be deemed charitable if it "relieves a government burden," although relief of a government burden is not required. OAR 150-307.130-(A)(3)(c).

In *Oregon Stamp Society v. Commission*, 1 OTR 190, 200 (1963), the court addressed the rationale for the charitable exemption in some detail. There, the court noted, for example that

> "[e]xemptions from the operation of a tax always create inequalities. Those not exempted must, in the end, bear and additional burden or pay more than their

share. (citation omitted) * * * Therefore, a 'grant of exemption is never to be considered as a mere gratuity – a simple gift from the legislature. * * * A consideration is presumed to exist. The recipient of the exemption may be supposed to be doing part of the work which the state would otherwise be under an obligation to do." (Citation omitted.)

The court then noted that "[i]n the statutory scheme for exemptions, ORS 307.130 is the basic statute, the one which expresses the 'consideration' rationale." *Id*. at 201. The court acknowledged that the legislature can, and does, "depart from this 'consideration' rationale * * * [but when it has done so] the legislature has enacted a specific statute, thereby taking the exemption out of the consideration rationale. See ORS 307.134 re: fraternal and veterans organizations." *Id*. Because this case does not deal with an express grant of exemption such as is afforded fraternal and veterans organizations, for example, the analysis focuses squarely on the requirement of "charity," and the three-part test set forth in *SW Oregon Pub Def Serv's*, and at this point in the decision, whether Plaintiff has "charity as its primary, if not sole, object."

In that regard, this case presents a difficult question. Although Plaintiff's bylaws do, indeed, state that it is organized for charitable and educational purposes, the bylaws further explain that its "primary purpose shall be to offer fine art photography education, support the arts community, and enhance public awareness of fine art photography through gallery exhibits, receptions, lectures, projects with other art organizations, * * * events for patrons, facilities used by students and renters, and programs for youth and the community." (Ptf's Ex 2 at 1.)

It is difficult to find a clear element of charity in Plaintiff's stated purpose. Photography education and public awareness are culturally enriching, but not necessarily charitable. Plaintiff has a building with a gallery that displays photography, classrooms for photography classes, darkrooms, and digital photography laboratories. The public is free to stroll through the gallery looking at pictures on the walls and attend several lectures each year free of charge. However,

photography classes are taught for a fee and the public must pay to use Plaintiff's photography

laboratories, darkrooms, and studio.

The court finds instructive certain language from *Oregon Country Fair v. Dept. of Rev.*,

10 OTR 200, 204-05 (1986):

> "The word 'charitable' has a two-part meaning. The first part of the meaning,
> which deals with the nature of the act called 'charitable,' requires that the act be
> for the good or benefit of human beings.
>
> "* * * * *
>
> "Looking first to that part of the meaning of charitable which relates to the
> benefiting of mankind, it is clear that the statute is not intended in the broad sense
> of the word. That is, while various cultural events, historical societies or other
> organizations may benefit mankind, they are not charitable within the strict
> meaning of that term. For purposes of ORS 307.130, the term 'charitable' must
> be applied in its narrow and traditional sense of relieving pain, alleviating disease
> or removing constraints. *Benton County v. Allen*, 170 Or 481, 485, 133 P2d 991
> (1943). In this sense, plaintiff is not a 'charitable' organization. Its purposes are
> to promote the arts and crafts, the exchange of ideas, the establishment of a
> community feeling of unity and enhance an earth-life harmony philosophy. All of
> these are unquestionably worthwhile and beneficial. Yet they cannot be said to be
> 'charitable' as that term is used in the statute."

The court finds the same to be true for Plaintiff's organization. Plaintiff's activities are,

indeed, worthwhile and beneficial, but they do not strike the court as "charitable" as that term is

commonly understood. Having determined that Plaintiff is not an organization that has charity

as its primary object, the court could end its inquiry without further analysis. However, the court

will nonetheless briefly address other aspects of the charitable exemption statute.

        b.      Does Plaintiff perform in a manner that furthers its charitable object?

Having found that Plaintiff lacks a charitable object, it is unnecessary to address the

second part of the three-part test from *SW Oregon Pub Def Serv's*. However, if Plaintiff were

operating a charity, Plaintiff would satisfy the second requirement.

/ / /

c.     Gift or giving

The third requirement is that the "organization's performance must involve a gift or giving." *SW Oregon Pub Def Serv's*, 312 Or at 89.  Plaintiff fails that requirement.

Plaintiff is a member organization that charges a fee for its services.  The tax year at issue is 2013-14, with a January 1, 2013, assessment date.  Plaintiff's total revenues in 2012 were $499,453.  (Def's Ex C at 1.)  Of that amount, $59,531 came from government and other grants, plus unspecified gifts and contributions.  (*Id*. at 8.)  The remaining $439,922 was earned through membership dues ($40,132) and program service revenues ($394,196).  (*Id*.)  The court did not receive any evidence as to the amount of Plaintiff's "giving" in 2012.

For 2013 Plaintiff reported total revenues of $410,241 and giving in the amount of $62,627.75.  (Def's Ex B at 1; Ptf's Ex 16.)  That equates to gifts and giving of 15.27 percent of total revenues that year.[6]  The court notes, however, that $23,955.20 of the reported giving relates to volunteer "benefits," and the significance of that reported gift is diminished, in the court's view, by the reciprocal nature of the arrangement.  Individuals volunteer to work at Plaintiff's gallery and studio approximately four hours per week and, in return, they are entitled to attend classes free of charge and use the facility at no cost.  According to Plaintiff's evidence, classes are valued at approximately $20 per hour.  (Ptf's Ex 24.)  The total reported dollar value of those categories of giving, calculated by Plaintiff, amounts to 38.25 percent of Plaintiff's reported total gifting.  Defendant argued during closing that this aspect of Plaintiff's operation constituted a closed loop whereby organizational volunteers agreed to donate a certain amount of time each week and, in return, could attend classes or use the photographic equipment free of charge.  The court finds that argument persuasive.  Removing the volunteer scholarships and

---

[6] $62,627.75 ÷ $410,241 = 0.1526608 = 15.27 percent (rounded).

facility use (valued by Plaintiff at $23,955.20, or 38.25 percent of giving), reduces Plaintiff's total giving to 9.43 percent.

Another significant portion of Plaintiff's giving comes from its practice of opening its photo gallery to the public free of charge, and allowing the public to attend certain open lectures at no cost. Plaintiff values those benefits at $29,372.55 ($27,278.60 for the open gallery and $2,093.95 for the lectures). (Ptf's Ex 16.) According to Plaintiff's explanatory note in Exhibit 16, the value attributed to the public's use of the gallery is calculated based on "all expenses associated with maintaining gallery less associated earned revenue (artwork sales, book sales, and registration fees)." (*Id*.) As a percentage of total giving in 2013, those two gifting categories (open gallery and lectures) come to 47 percent (rounded); as a percentage of total revenue, public access to the gallery and lectures equates to 7.16 percent ($29,372.55 ÷ $410,241). The court is not persuaded that allowing the public free access to the photo gallery and lectures constitutes gift or giving. For one thing, the photographs on the gallery are all for sale, and Plaintiff receives a portion of any sales. Moreover, the gallery likely serves as a means to get the public in the front door, where they discover that there are classes and photographic laboratory equipment and facilities available for a fee as well. Thus, there would seem to be an element of marketing involved. Additionally, Plaintiff did not sufficiently explain to the court how it arrived at its calculation of net value for the gallery and lectures. There is, therefore, some question as to the reliability of the $29,372.55 figure for those free events (gallery and lectures). Removing those two categories (volunteer scholarships and facility use plus public access to gallery and lectures) leaves only the $9,300 of reported community scholarships. That amounts to merely 2.27 percent of total revenue in 2013. The court finds those scholarships to be the only element of giving involved, and the level of giving is insufficient.

The court therefore finds that Plaintiff is not a charitable institution because it does not have charity as its primary object and lacks the requisite degree of gift or giving.

B.      *Actual and exclusive use*

The other statutory requirement for charitable exemption under ORS 307.130 is that the property be "actually and exclusively occupied and used in the * * * charitable * * * work carried on" by Plaintiff's organization. Having found that Plaintiff is not a charitable institution, as explained immediately above, the court need not explore that requirement.

The court offers one observation. In *Emanuel Lutheran Char. v. Dept. of Rev. (Emanual I)*, 4 OTR 410, 422-23 (1971), Judge Roberts wrote: "The property of nongovernmental charitable institutions must conform to certain prerequisites, no matter how worthy the institution's purposes may be. Matters of degree become important and lines must be drawn, if the legislative intent is to be fulfilled. The legislature, under ORS 307.130, intends that the area of exemption cease at a particular point, and that point must be discovered by the court, if possible."

Viewing the evidence as a whole, the court finds that Plaintiff is not entitled to a charitable exemption under ORS 307.130(2) because Plaintiff is not a charitable institution. That conclusion is based on the court's determination that Plaintiff does not have charity as its primary object and does not perform in a manner that evinces a sufficient element of gift or giving.

### III.  CONCLUSION

The court has carefully evaluated the evidence and concludes that Plaintiff is not entitled to a property tax exemption for the 2013-14 tax year because it is not a charitable institution as determined by reference to the three-part test set forth in the relevant case law. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and

Defendant's denial of Plaintiff's applications for exemption is upheld.

Dated this ___ day of July 2014.

_____

DAN ROBINSON
MAGISTRATE

***If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.***

***This Final Decision was signed by Magistrate Dan Robinson on July 15, 2014. The Court filed and entered this Final Decision on July 15, 2014.***